Montgomery v. Viers, Judge.

---

CASE 84.—MOTION FOR MANDAMUS IN APPELLATE COURT BY JAMES MONTGOMERY AGAINST CYRUS VIERS, JUDGE OF THE HARDIN QUARTERLY COURT.—November 27.

# Montgomery v. Viers, Judge

Motion made in Kentucky Court of Appeals—Motio denied.

1. Mandamus—Jurisdiction—Courts.—Under Civ. Code Prac. sections 474, 477, prescribing the practice in applications for mandamus in circuit courts, etc., an application for such writ, to compel the judge of a quarterly court to sign a judgment entered by his predecessor or to enter a new judgment in the same terms nunc pro tunc, should be made to the circuit court, and not to the Supreme Court, though Const. section 110, confers original jurisdiction of such application on the Supreme Court.

2. Judgment—Correction—Jurisdiction.—Common-law courts have power to correct their own judgments so as to make them conform to the original fact.

3. Records — Lost and Defaced Records — Substitution.—Courts have inherent power to supply their lost or defaced records.

4. Judgment—Definition.—The judgment of the court is the pronouncement of the judge on the issue submitted to him;

Montgomery v. Viers, Judge.

the record being merely historical and evidentiary.

5. Judgment—Entry—Sufficiency.—A judgment entry will be regarded as sufficiently formal, if it identifies the parties, shows the relief granted, and that it is the act of the court.

6. Judgment—Entry Nunc Pro Tunc.—Courts will enter a judgment which was in fact rendered, but which through the omission of the clerk or other casualty has not been recorded nunc pro tunc, provided strict record proof of the fact of its rendition is made.

7. Judgment—Correction—Subsequent Entry.—If the court has failed to act, or has acted erroneously, the matter cannot be corrected by a judgment at a later term; but if it has acted as shown by the record, but there is not sufficiently formal evidence of the fact, the evidence may be made to conform to the truth as shown by the record.

8. Judges—Incumbent Judge—Rights of Successor.—Since the court does not die or fail, whatever may become of the incumbent, when one insumbent dies leaving an official act unfinished, his successor may complete it, and hence, where a judge dies, without signing the record of a judgment, his successor is authorized to sign the same to complete the record.

9. Mandamus — Scope of Writ—Judges — Judgment Entry — Signature—Ministerial Act.—The signing of a judgment entered by the judge of a quarterly court is a ministerial act, not involving discretion, which he may be compelled to perform by mandamus.

10. Judgment—Signature Nunc Pro Tunc — Omission—Parties.—On an application to a judge to sign a judgment entry nunc pro tunc, it was proper for him to require notice not only to the parties against whom the judgment was rendered, but to any other person who had become interested in the title to the property, which had become affected by the proceedings under the regular entry.

11. Appeal and Error—Judgments Appealable.—Action of a trial judge in requiring notice of an application for the signing of a judgment entry nunc pro tunc, and his decision as to whether the rights of others had intervened, and whether plaintiff was guilty of such laches as precluded the exercise of the court's power, was judicial and reviewable by appeal.

JAMES MONTGOMERY for self.

LAYMAN & HOLBERT and L. A. FAUREST for respondent.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—
Motion denied.

Plaintiff avers that in 1900 a judgment by default
was rendered in his behalf by the Hardin county
quarterly court against Euclid Walker and Mary F.
Walker, for $49.50, with interest and costs, but that
the then judge of said court, who was also its clerk,
failed to sign the judgment upon the judgment book.
Application was made recently by plaintiff to the
rspondent, who is now judge of the Hardin county
quarterly court, to sign that judgment, or, in lieu of
doing so, to enter now for then a judgment identical
in terms. The respondent refused to entertain the
motion unless notice was given to the Walkers; the
case having years ago gone off the docket. There-
upon the plaintiff exhibits his petition in this court,
praying that the writ of mandamus issue against the
respondent compelling him to enter the judgment
now for then.

Although section 110 of the Constitution may
confer ample authority upon this court to issue the
writ in such a case, the rule here is that, if the ap-
pellant has an adequate remedy elsewhere, we refrain
from acting under our original jurisdiction. Section
474, Civ. Code Prac., prescribes the practice in ap-
plications for mandamus in the circuit courts. And
section 477, Id., defines the writ issuable out of that
court as follows: "The writ of mandamus, as treated
of in this chapter, is an order of a court of competent
and original jurisdiction, commanding an executive
or ministerial officer to perform an act, or omit to
do an act, the performance or omission of which is
enjoined by law; and is granted on the motion of

the party aggrieved, or of the Commonwealth when the public interest is affected." Common-law courts have from earliest times exercised the prerogative of correcting their own judgments by their own records so as to make them conform to the original fact. In this they have exercised the inherent power of supplying their lost or defaced records. It must be manifest that the record is not the judicial act. It is only historical. Its principal practical use is evidential. The judge hears the case. So may the jury. The judgment of the court is the pronouncement of the judge upon the issue submitted to him. When spoken, it is the court's judgment. Necessarily, the giving of the judgment must precede its historical engrossment. The clerk of the court executes the mechanical act of recording in some manner so as to give permanence to the evidence of the judgment that the court has delivered. So it is of all the interlocutory orders in the case that the court may have directed. Anciently the record so made and kept was termed the judgment roll. The highest verity, from considerations of public policy, is attributed to the records and judgments of courts as matters of evidence. Generally, they may not be contradicted by other evidence, and are particularly binding upon the parties to the proceeding, and upon their privies in estate, and in some instances upon their privies in blood. Very properly, such records, accorded such high value, ought to be most carefully preserved and authenticated. The clerk's roll, or record book, securely preserved at the public expense, not to be used for any other purpose, and open to public inspection, is a means to that end; but some officer whose responsibility may be regarded as higher ought to authenticate what the clerk has re-

corded as the action of the court. None other is so well qualified, or so much interested, as the judge of the court whose acts are involved. Hence for all time the presiding judge or justice has usually signed the records of his court, perhaps not for the purpose of making of them records, but to identify them as such, and to authenticate them in the most irrefragable manner, for future use; but his signature is not always deemed essential to the completeness of the record, or to its validity as such.

In this State, since at least the year of 1800, and before, it has been obligatory upon the judge to sign the record of the orders and judgments of his court. By section 12 of the act of December 12, 1800 (2 Litt. Dig. p. 401), it was provided: "Every clerk of a quarter session court shall draw up and record, on the evening of each day, the several orders of his court of that day, and if correct, it shall then be signed by the presiding justice of such court, but the record of the proceedings of the said courts on the last day of any term, shall be read and signed as aforesaid, on the first day of the ensuing court. Nothing herein contained shall prevent the minutes of the court before mentioned, from being read and signed, as heretofore, each day before the adjournment of the court." The existing statute on the subject, being part of the chapter relating to the duties of clerks (section 378, Ky. St. 1903), reads: "The proceedings of each day shall be drawn up by the clerk from his minutes in a plain, legible manner, which, after being corrected as ordered by the court, and read in an audible voice, shall be signed by the presiding judge." In Raymond v. Smith, 1 Metc. 65, 71 Am. Dec. 458, it was held that a loose paper among the files of a suit, purporting to be the judgment of the court in

that case, but not recorded, nor signed by the judge, nor indorsed in any manner to show that it had been filed, nor in the hand-writing of the judge, was not a judgment of the court. Whether, if the paper had been signed by the judge, or recorded in the order book by the clerk but not signed by the judge, it would have been valid, was not presented, and, of course, was not decided. It was argued that it was a sufficient matter by which to amend the record so as to have it become the judgment of the trial court. This court observed of that suggestion: "It is true, as argued by the appellants, that the record may be amended, in certain cases; but there must invariably be something to amend by. The effort in this case is not, however, to amend the record, but actually to establish a record which has no existence by proof of extraneous facts."

As regards the sufficiency of the entry of a judgment, Freeman (Freeman Judgments, 550) says: "I think however, that from the cases this general statement may be safely made: That whatever appears upon its face to be intended as the entry of a judgment will be regarded as sufficiently formal, if it shows: (1) The relief granted; and (2) that the grant was made by the court in whose record the entry is written. In specifying the relief granted, the parties of and for whom it is given must, of course, be sufficiently identified." In inferior courts the same strictness in this, as in other particulars, has not been exacted, though none the less desirable. A few instances cited by Freeman may be referred to as relevant. In New York, justices of the peace were required to enter their judgments in their dockets within four days after the rendition of the judgments; but, under the general rule that the entry, of

a judgment is a ministerial act, the failure of a justice to comply with that part of the law as to time of recording the judgment was held to leave the judgment in force. Hall v. Tuttle, 6 Hill, 38, 40 Am. Dec. 382; Walrod v. Shuler, 2 N. Y. 134; Fish v. Emerson, 44 N. Y. 377. In the last-named case, while censuring such loose practice on the part of the magistrate, the judge writing the opinion for the Court of Appeals said: "I am unable to find any principle of law requiring us to hold that the omission to docket must inflict a penalty upon the plaintiff more justly due to the magistrate." In Maine, a justice of the peace, after having been out of office for over three years, completed the record of a case which he had tried by writing up and entering a judgment upon his judgment book. Matthews v. Houghton, 11 Me. 377. It was said of the trial magistrate that he in entering up his judgment acted ministerially, as clerk. The judgment was held to be regular. In the California case cited (Lynch v. Kelly, 41 Cal. 232), the justice had failed to enter a judgment upon the verdict of the jury. Subsequently, he issued an execution upon the judgment. The question arose whether steps taken under the execution were not void in consequence of the judgment having been omitted. It was held that he might have been compelled in a proper judicial proceeding to have entered up the judgment, and that, though informal and irregular, the action under it was not void.

Under the maxim that "An act of the court shall prejudice no one" (Broom's Legal Maxims, p. 115), made to also read by its frequent application to this class of cases as "A delay of the court shall prejudice no one," the practice of entering judgments nunc pro tunc exists, and has from very early times.

Doune v. Lewis, 11 Ves. 601. Nor is there a limitation upon the time when it may be done, unless such be found in the modern statutes of limitation; one instance being recorded where such an entry was made 23 years after the judgment was rendered. Danl. Ch. Pr. 1219. The entry of such judgments are always to protect some right that has arisen since the judgment was delivered, as otherwise a judgment now would be as efficacious as if entered then. For that reason, and to that end, in pursuance of the maxims just quoted, the courts will enter a judgment which was in fact rendered, but which through the omission of the clerk, or other casualty, has not been recorded; but, before proceeding to order such judgment entered as of the date of its rendition, strict evidence is required that it was then so rendered. Therefore the rule is that such judgment can be entered only upon evidence of the fact of its rendition contained in the record itself. One purpose of entering a judgment now for then is to supply a matter of evidence, and not to alter or create facts. If the court had failed to act, or had acted erroneously, the matter cannot be corrected by a judgment at a later term; but if it had acted, and the record shows it, but there was not made sufficiently formal evidence of the fact, the evidence may be made to conform to the truth as shown by record. In Graham v. Lynn, 4 B. Mon. 17, 39 Am. Dec. 493, it appeared that a judgment had been pronounced in court in the suit of Graham v. Switzer, on September 6th, which by omission of the clerk was not entered on the order book. It was entered nunc pro tunc on December 10th. An execution had issued on the judgment on September 17th, under which lands of the execution defendant had been levied on and sold. It was con-

tended that the proceeding under the execution was void for lack of a supporting judgment. This court said: "The object and effect of such an order is to furnish proper evidence of acts properly done by the court, but not properly exhibited by its record, and such evidence is furnished nunc pro tunc, for the very purpose of supporting those acts which, though the proper consequences of a judgment, would seem to be irregular and void because there is no proper evidence of the judgment. If the judgment be in fact rendered by the court, but not at the time regularly and fully entered, a fieri facias issued in pursuance of the judgment is not void, but voidable only, and capable of complete validation, by afterwards making a proper entry of the judgment on the record, showing when it was in fact rendered and entering it now for then."

If the relief desired by the plaintiff is the signature of the orders embracing the alleged judgment in his behalf, and if it appears that there is such a record in the quarterly court that would have justified the entering of the judgment then, the judge of the quarterly court now in office ought to sign the record in order to complete it. The court does not die, or fail, whatever may become of the incumbent. So when one incumbent dies, leaving unfinished an official act, his successor may complete it. This precise principle was applied in City of Louisville v. Board of Park Commissioners, 112 Ky. 409, 65 S. W. 860, 24 Ky. Law Rep. 38. The judge of the quarterly court is also its clerk. The entry of the judgment is the act of the clerk; its signature the act of the judge. But it is not an act involving the exercise of discretion. It is ministerial, and, if there appears no good reason to the contrary, the judge may be compelled to sign a

record which in law it was his duty to sign unconditionally. The judgment which was rendered (if one was) was the act of the court. Its recordation having been complete, as it is alleged it was, it remained only for the judge to sign it. Having died before signing it, the act loses none of its efficacy so far as it had gone; the matter had none the less passed into judgment. The suggestion that the respondent may not have such personal knowledge of what originally transpired as to warrant his accepting the entry as true is unsound. The personal recollection of the judge, though it may be exercised in approving the record originally, as the statute implies it may be, is rarely, if ever, resorted to to supply evidence even in aid of the record evidence in entering a judgment nunc pro tunc. If, then, the former judge could not properly have called his personal recollection of the matter to his aid in determining what judgment had been previously rendered, but would have been required to look alone to the files and record of the suit, what difference can there be that another is required to do the same, no more nor less? The present official can examine the record. He can see whether it imports a regular entry, and whether it is written by the clerk who recorded the other entries of the time. He can see whether the summons had been served in due season, or whether the record shows that the defendants had appeared. He may examine the minute book and docket of the court. And from all these sources of record evidence can determine whether the judgment is correctly entered, and thereupon sign it, or, though not entered, to enter it now for then, thereby securing the plaintiff. in such rights as legally accrued to him by its virtue

but for the omission complained of by which the record was not formally completed.

Even if the former judge were living he might have wholly forgotten the circumstances of the transaction, or after these years, misremembered them. Hence the rule of resorting to the record alone, and not to the judge's memory, to see what judgment ought to be entered now for then. In Tidd's Practice, 965-972, it was stated upon authorities cited that the practice of allowing such entries is attended with great caution, lest the rights of innocent strangers may be affected. Hence notice of the application should be given. In the case at bar, not only the Walkers, whose rights are necessarily involved, but we think any other person who may have become interested in the title to the property which had become affected by the proceedings under the regular entry, should have notice of the motion. The respondent was right in requiring it. His action upon the application then becomes a judicial act, for he must decide whether such rights of others have in the meantime arisen, and whether the plaintiff was guilty of such laches as precludes the exercise by the court of its power to enter the judgment now for then. His judgment upon that score is appealable, and in any event the matter can best be tried out in the circuit court, whose original jurisdiction in the matter of granting the mandamus, should one lie, is ample. Then the matter can come here by appeal, rather than by primary application.

The motion for mandamus is denied.

Petition for rehearing by appellant overruled.