COMMONWEALTH of Kentucky, DE-
PARTMENT OF HIGHWAYS,
Appellant,

v.

John C. CLARKE et al., Appellees.

Court of Appeals of Kentucky.

Nov. 23, 1960.

John B. Breckinridge, Atty. Gen., H. D. Reed, Jr., Chief Asst. Atty. Gen., Lawrence L. Pedley, Atty., Dept. of Highways, Frankfort, for appellant.

Thomas Phipps, Chesley Lycan, Ashland, for appellees.

CULLEN, Commissioner.

The Commonwealth, through the Department of Highways, appeals from a judgment

awarding John C. Clarke and wife the sum of $60,000 for land taken and for resulting damages to their farm in the condemnation of right of way for a highway.

■ The award of the commissioners in the county court was in the amount of approximately $43,000. The Commonwealth appealed to the circuit court and the Clarkes filed a cross-appeal. The Commonwealth contends that the circuit court erred in entertaining the cross-appeal because it was not filed within 30 days from the day the written judgment was signed by the county judge. (If the cross-appeal was not in time the question of *insufficiency* of the damages could not be litigated in the circuit court, Bennett v. Commonwealth, Ky., 322 S.W.2d 706.)

The statute governing the particular condemnation procedure followed in this case, KRS 177.087, requires that an appeal or cross-appeal be taken within 30 days from "the date of a judgment." The Commonwealth maintains that the "date of a judgment" is the date the written judgment paper is signed by the judge. The appellees contend (and the circuit court held) that the "date of a judgment" is the date the *order book* containing the recorded judgment is signed by the judge. (Here the cross-appeal was filed within 30 days from the latter date.)

In City of Frankfort v. Yount, Ky., 262 S.W.2d 665, it was held that under CR 72.02, which provides generally for appeals from inferior courts to the circuit court and requires that the appeal be taken within 30 days from "the date judgment is rendered," the date of rendering of a *quarterly court* judgment is the date the order book is signed. Referring to a statement in Harlan County ex rel. Middleton v. Brock, 263 Ky. 530, 92 S.W.2d 757, to the effect that a judgment becomes effective for the purpose of an appeal on the day it is signed, the court pointed out that "signed" means signed on the order book and does not apply to signing original papers.

In the Yount opinion the Court placed significance on the provisions of KRS 28.050 requiring that the clerks of quarterly courts record the proceedings of the court and that the record book be signed by the judge. Similar requirements for county courts are set forth in KRS 25.160. In view of the similarity of the two statutes, and since we find no basis for a conclusion that "date of a judgment" was intended to or should have a different meaning than "date judgment is rendered," it is our opinion that the Yount case is controlling here and that the circuit court properly entertained the cross-appeal.

■ The second contention of the Commonwealth is that the circuit court erred in overruling a motion to discharge the jury, made on the ground that a certain person of local and state-wide political prominence improperly was present when the jury viewed the premises. It appears that by agreement an engineer for the Highway Department and the attorney for the Clarkes were permitted to attend the viewing of the premises. The jurors were taken to the place by the sheriff and remained under his surveillance. The attorney for the Clarkes did not have his automobile so the person complained of offered transportation in his automobile. He drove the attorney to the Clarke farm and remained there during the viewing. However, it is convincingly established by affidavits that his verbal contact with the jurors consisted of no more than an exchange of greetings with some of them. Most of the time he remained in his car. There is no allegation that he discussed the case with any of the jurors, and the sheriff stated positively in his affidavit that there was no discussion of the case between the person in question and any of the jurors.

Since there is no showing of any prejudicial contact of this person with the jurors at the place of the viewing, his being at the place, even though it be considered an impropriety, did not constitute reversible error. See Martin v. Tipton, Ky., 261 S.W.2d

809; Davidson v. Moore, Ky., 340 S.W.2d 227.

The Commonwealth argues, however, that the mere presence of this person at the time of the viewing, coupled with his identification in the case on the side of the Clarkes by his sitting near their attorney in the courtroom and occasionally conferring with him, and his later testifying as a witness on behalf of the Clarkes on the question of the value of the farm, constituted a prejudicial influence because of his political prominence. In effect the Commonwealth seeks a ruling that persons of special prominence in the community cannot identify themselves with either side of a lawsuit in proceedings before a jury. It appears to us that such a rule would be completely impracticable and unworkable. A jury cannot be hermetically sealed off from every conceivable kind of possible influence, and as a practical matter persons could not be excluded from identification with a lawsuit merely because of their prominence. It must be presumed that the jurors have some degree of discriminatory judgment.

The final contention of the Commonwealth is that the award of damages is excessive. However, the brief on this point does little more than invite us to search the record.

The farm in question consists of 1,100 acres, located some 10 miles from Catlettsburg. The amount of land taken was 7.68 acres, along the front of the farm. On the land taken were two large barns and a tenant house. The new highway will run within eight feet of the front door of the main dwelling on the farm, materially depreciating its value as a residence. In addition the usefulness of additional barns and silos will be impaired, access to a railroad spur will be cut off, and considerable new fencing will be required.

Seven amply qualified, disinterested witnesses for the Clarkes gave estimates of the damages running from $64,720 to $97,720. While some of the items appear to have been given inflated values we cannot say that the values were so excessive as to be unacceptable. There was sufficient evidence to sustain the verdict. The amount of the verdict does not strike us as being the result of passion or prejudice. Accordingly the verdict must be upheld.

The judgment is affirmed.