Joe GREEN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 3, 1967.

Rehearing Denied April 28, 1967.

Fritz Krueger, Somerset, for appellant.

Robert Matthews, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Joe Green has been convicted and sentenced to imprisonment for two years for violation of KRS 242.230 (illegal traffic in intoxicating liquor in local option territory). The penalty was based upon the Commonwealth's accusation and evidence that Green had committed two prior offenses under KRS 242. See KRS 242.-990(1). The appellant undertakes to present several questions on appeal, but we conclude that some of them have not been properly preserved for appellate review. The chief question upon appeal is whether the proof of the first of the two prior convictions was legally sufficient.

The indictment charged appellant with unlawful sale of alcoholic beverage in local option territory on the ___ day of June, 1965; that offense was the "prime offense" charged. The indictment then alleged that appellant had been duly convicted of a violation of KRS 242 in the Pulaski Quarterly Court on May 31, 1950, pursuant to his plea of guilty in that forum. It was alleged in the indictment that appellant had been found guilty in the quarterly court on the 1950 charge, fined $100 and sentenced to imprisonment for 30 days. The indictment averred that the judgment of 1950 had never been modified or vacated.

The same indictment contained a charge that appellant had been convicted of another violation of KRS 242 by judgment of the Pulaski Circuit Court entered February 6, 1964, and that the offense and conviction in that proceeding were subsequent to the offense and conviction in 1950. Green tested the 1964 conviction here with negative result. Green v. Commonwealth, Ky., 383 S.W.2d 118. That was a misdemeanor conviction:

Pulaski County Judge John W. Garner was a witness for the prosecution and presented the quarterly court records relating to the 1950 proceedings in the Pulaski Quarterly Court. It developed that although an appropriate judgment re-flecting the conviction appeared on the official order book, that judgment had never been signed by the judge of the Pulaski Quarterly Court who rendered it. In fact, it is undisputed that the quarterly court record was not signed until May 23, 1966, the date of the jury trial in the present proceeding. The judgment bears the signature of Judge Garner in this language: "John W. Garner, May 23, 1966, Judge of Pulaski County Quarterly Court succeeding C. I. Ross, Judge of Pulaski County Quarterly Court on order of Judge R. C. Tartar." Judge Tartar was and is the circuit judge before whom the instant case was tried.

Appellant takes the position that the record demonstrates on its face that the purported 1950 conviction was void for want of the signature of the presiding judge of the Pulaski Quarterly Court. He points out that the indictment necessarily charged that the 1950 conviction was in full force and effect, when in any circumstance it had no possible validity until the signing by Judge Garner, which occurred several months after the indictment was returned. In support of his position appellant calls attention to KRS 28.050 which requires that orders of a quarterly court shall be signed by the presiding judge. Of like import are decisions of this court relied upon by appellant: Johnson v. Com., 80 Ky. 377, 4 K.L.R. 210; Kitchner v. Com., 206 Ky. 707, 268 S.W. 285; Com. v. Clarke, Ky., 340 S.W.2d 442; Com., Dept. of Highways v. Daly, Ky., 374 S.W.2d 497; and Com., Dept. of Highways v. Howard, Ky., 402 S.W.2d 853.

■ We do not quarrel with those precepts, but are persuaded that they do not rule this case. It is apparent that KRS 242.990(1), in providing increased penalties for individuals who have committed prior offenses denounced by KRS 242, has as one salutary purpose the deterrence of repeated offenses against the local option law. Here we do not deal with whether the quarterly court judg-

ment was procedurally perfect, or whether it was final. We think there can be no doubt that Judge Garner had the legal authority to sign the order as he did, and that when he did the order became valid for all purposes. See Montgomery v. Viers, 130 Ky. 694, 114 S.W. 251, in which is contained a scholarly and illuminating discussion of the question at hand. The following excerpt from that opinion succinctly states the rule:

"If the relief desired by the plaintiff is the signature of the orders embracing the alleged judgment in his behalf, and if it appears that there is such a record in the quarterly court that would have justified the entering of the judgment then, the judge of the quarterly court now in office ought to sign the record in order to complete it. The court does not die, or fail, whatever may become of the incumbent. So when one incumbent dies, leaving unfinished an official act, his successor may complete it." Id., 114 S.W. at 254.

The same authority points up the significance of the court records in this language:

"Common-law courts have from earliest times exercised the prerogative of correcting their own judgments by their own records so as to make them conform to the original fact. In this they have exercised the inherent power of supplying their lost or defaced records. It must be manifest that the record is not the judicial act. It is only historical. Its principal practical use is evidential. * * * Necessarily, the giving of the judgment must precede its historical engrossment." Id., 114 S.W. 252.

Thus, it is seen that Judge Garner's act in signing the 1950 judgment furnished official verification that the Pulaski Quarterly Court had been the scene of Joe Green's conviction in 1950 of a violation of KRS, Chapter 242. In light of the principles enunciated above, we hold that the 1950 conviction was properly admitted as a link in the requisite chain of progressive offenses prescribed in KRS 242.990(1). The view here expressed finds support, by parity of reasoning, in Com. v. Reynolds, Ky., 365 S.W.2d 853.

The appellant contends that even if the 1950 conviction was properly admitted the proof failed of reflecting the required progressive sequence of offense and conviction, followed by offense and conviction. Heavy reliance is placed upon Marcum v. Com., Ky., 398 S.W.2d 886. In Marcum we did observe that the evidence relating to the sequence of events should be specific, although we recognized that the dates involved in Marcum did "leave an inference that such was the case." It will be observed that the basis for the court's ruling in the Marcum case was error in the instructions, and the comment concerning "specific" evidence as to progressive sequence looked toward another trial. In the present case the first conviction—for a misdemeanor—occurred in 1950. The second conviction was shown to have occurred in 1964, and was also a misdemeanor conviction. Prosecutions for misdemeanors are barred in Kentucky unless commenced within one year after the misdemeanor was committed. KRS 431.090. This fact, coupled with the passage of 14 years between the first and second convictions, furnished abundant circumstantial evidence and inference of the required progressive sequence.

The appellant asserts that there was not sufficient evidence to identify him as the individual convicted in 1950 and 1964. We have recently adhered to the principle announced in earlier decisions that "[i]dentity of name[s] is prima facie evidence of identity of person[s]." See Foster v. Commonwealth, Ky., 415 S.W. 2d 373 (Decided October 28, 1966); Sullivan v. Commonwealth, 222 Ky. 771, 2 S.W.2d 666. We have no disposition to depart from that precept.

Appellant undertakes to present claimed errors in the instructions as

grounds for reversal, but these claimed errors are not available for appellate review; they were not preserved in any manner in the trial court. Kaenzig v. Commonwealth, Ky., 390 S.W.2d 648. Although appellant here did move for a new trial, no reference was made in that motion to any claimed error in the instructions. In this state of case we decline to review the instructions.

■ A final contention is made that one of the jurors who served on the trial had served on the grand jury which returned the indictment in the case. The record is devoid of any substantive evidence reflecting that the juror was indeed a member of both the grand and petit juries in the case. The record contains nothing of the *voir dire* examination, so it may not be discerned whether inquiry was made about the point at hand. Finally, the record recites that a "hearing" was had on appellant's motion for new trial, as amended, but it is silent as to what occurred at the "hearing." In this situation we have no reviewable question.

The judgment is affirmed.