Hon. John W. POTTER, Judge, Jefferson Circuit Court, Appellant,

v.

ELI LILLY AND COMPANY, Dista Products Company, Joyce Fentress, Individually and as Executrix of the Estate of Kenneth Fentress, Roma Jean Barger, Individually and as Executrix of the Estate of Richard Owen Barger, Sr., Angela Bowman, Douglas Bowman, Michael P. Campbell, Forrest Conrad, Saundra Conrad, Linda Ganote, Individually and as Executrix of the Estate of William Spencer Ganote, Paul Gnadinger, Charles M. Gorman, Stanley Hatfield, Darlene Hatfield, William Hoffman, Janis G. Mudd, Administratrix of the Estate of James G. Husband, Sr., Andrew C. Pointer, Shirley Pointer, Juanita Sallee, Individually and as Administratrix and Personal Representative of Paul Sallee, Gordon L. Scherer, Sr., David C. Seidenfaden, Jerilyn M. Seidenfaden, John Edwin Stein, Linda Sue Stein, Jacquelyn Y. Tronzo and Tracey L. Needy Leet, Co–Administrators of the Estate of Sharon L. Needy, Paula Warman, David Warman, Maryla White, Individually and as Administratrix of the Estate of Lloyd Ray White, and Sarah Wible, Individually and as Executrix of the Estate of James P. Wible, Sr., Appellees.

No. 95–SC–580–MR.

Supreme Court of Kentucky.

May 23, 1996.

Rehearing Denied Aug. 29, 1996.

Richard Hay, Somerset, John W. Potter, Jefferson Co. Hall of Justice, Louisville, for Appellant.

Irvin D. Foley, Louisville, Paul L. Smith, Dallas, TX, Edward H. Stopher, Boehl Stopher & Graves, Louisville, Lively M. Wilson, John L. Tate, Stites and Harbison, Louisville, John F. Brenner, McCarter & English, Newark, NJ, Lawrence J. Myers, Freeman & Hawkins, Atlanta, GA, Frank P. Doheny, Jr., Hirn, Doheny, Reed & Harper, Louisville, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which granted a Writ of Prohibition against Jefferson Circuit Judge John W. Potter from conducting a hearing to determine whether the judgment entered in the so-called Prozac case styled "Joyce Fentress, et al v. Eli Lilly and Company, Civil Action No. 90–CI–6033" was correct and reflects the truth.

The issue in this case is whether the trial judge can conduct a hearing to determine if the judgment rendered is true and correct.

The precise legal issue in this case arose after a jury had returned a verdict on December 12, 1994 and the circuit judge entered a judgment on January 25, 1995 in which he ordered and adjudged that the claims against the defendants be dismissed with prejudice. No post-judgment motion was filed, and the appeal time pursuant to CR 73.02(1)(a) expired on February 24, 1995, without an appeal being filed. The circuit judge then filed his own motion pursuant to CR 60.01 on April 19, 1995 stating that the preamble to the judgment entered on January 25 suggested that the dismissal was based solely on a jury verdict but that he now believes it was more likely than not that the case had been settled. The circuit judge scheduled a hearing for any party to show cause why the judgment should not be amended to read, after amendment, that the case was "dismissed with prejudice as settled."

Some factual background must be presented in order to understand the significance of this case. In 1989, Joseph R. Wesbecker, a disgruntled former employee, entered the Standard Gravure Printing plant in Louisville and shot and killed eight people and seriously wounded twelve others. The estates of the eight decedents and twelve of the injured persons filed lawsuits against various defendants including Eli Lilly Company. All of the defendants other than Lilly settled or were dismissed prior to the trial which began on September 26, 1994.

The trial was trifurcated so that the only issue to be decided by the jury was whether the anti-depressant drug Prozac manufactured by Lilly was unreasonably dangerous and defective and whether it caused Wesbecker to kill or injure the plaintiffs. The trial judge reserved the issues of compensatory and punitive damages for future trials. The trial itself lasted 47 days during which 75 live witnesses testified, 22 depositions were presented to the jury and 411 exhibits were introduced into evidence. When the trial of this case started, there were approximately 160 other Prozac cases pending against Lilly. This case was the first to go to trial.

An important element in the proof presented by Lilly was that Prozac, and its U.S. package insert, had been approved by the Federal Food and Drug Administration. The plaintiffs attempted to counter this evidence by demonstrating that Lilly had failed to accurately report test results, including the German government tests, to the FDA. Before trial, the trial judge had excluded as irrelevant and unduly prejudicial evidence that Lilly in 1985 had been sanctioned for its failure to report to the FDA adverse incidents resulting from Oraflex, an arthritis drug that had been taken off the market. Both Lilly, as a corporation, and its chief

medical officer had pled guilty to violations of multiple criminal counts of various federal statutes and withholding evidence adverse to the drug, including the deaths, from the FDA.

During the presentation of the evidence by Lilly, the plaintiffs repeatedly asked the trial judge to rule that Lilly had "opened the door" to the Oraflex evidence through witnesses who had described Lilly's reputation for reporting adverse incidents to the FDA. This trial issue was extensively argued. The adversarial encounter took more than a day from the trial. The trial judge then reversed his prior ruling and held that the Oraflex evidence would be admitted. On the following day, the plaintiffs closed their rebuttal evidence without introducing the results of their victory in regard to the evidentiary ruling. The circuit judge immediately requested an off-the-record discussion where he asked "whether money had changed hands" or words to that effect. Counsel for the parties assured the court that no settlement had been reached. Counsel for the appellees dispute this sequence of events as recounted in Judge Potter's affidavit. However, we find the record devoid of any information that indicates that the trial judge was informed in any way that any settlement had been reached.

A careful and thoughtful examination of the entire record in this case indicates that some sort of settlement was reached before the case was submitted to the jury. It certainly can be argued that there was a great lack of candor to the trial court in regard to the settlement agreements.

As noted earlier, the case was submitted to the jury which returned a verdict finding that Lilly was not at fault. The circuit judge then entered a judgment which dismissed the claims with prejudice. Approximately three months later, on April 19, 1995, the trial judge issued a *sua sponte* motion pursuant to CR 60.01 to correct an alleged clerical mistake in the judgment. The circuit court ordered that any party may appear to show cause why the original judgment should not be amended. The judge also issued subpoenas for counsel for the plaintiffs and for Lilly, compelling them to appear and testify in behalf of the court's desire to enter the corrected judgment. The circuit court also issued a subpoena for a law firm, counsel for Lilly, requiring it to produce documents requested by the court. At this point, the parties united in the present action.

The Court of Appeals unanimously granted the request of the parties for a Writ of Prohibition preventing the circuit judge from proceeding with this motion pursuant to CR 60.01 and from enforcing any of the subpoenas which had been issued. The Court of Appeals determined that the circuit judge had lost jurisdiction to reopen the judgment.

■ We must observe that a Writ of Prohibition is an extraordinary remedy and is generally issued only when the court in question is proceeding or is about to proceed outside its jurisdiction and there is no adequate remedy by appeal, or where it is about to act incorrectly, although it is within its jurisdiction, and there exists no adequate remedy by appeal or otherwise, and great injustice and irreparable injury would result to the petitioner if the court in question should so act. *Shumaker v. Paxton*, Ky., 613 S.W.2d 130 (1981); *Bender v. Eaton*, Ky., 343 S.W.2d 799 (1961).

■ We are well aware that CR 60.01 allows a trial court to correct clerical mistakes in its judgments and errors therein arising from an oversight or omission at any time on its own initiative. We do not believe that CR 60.01 invests the trial court with either jurisdiction or authority to make substantive changes in a judgment. The effect of the rule is limited to mistakes that are clerical in nature.

■ In this case, it does not appear that CR 60.02 is applicable. Although it is not abundantly clear, the interpretations of the rule indicate that CR 60.02 is only available to a party or his legal representative. The trial judge is certainly not a party to the litigation originally. *See* Wright, Miller and Kane, *Federal Practice & Procedure: Civil* 2nd § 2852 at 235; *Jude v. Morwood Sawmill, Inc.*, Ky.App., 726 S.W.2d 324 (1987).

The crux of the argument presented by Judge Potter is that a trial court has the

right and duty to see that its judgments accurately reflect the truth and that the trial court has the inherent authority to determine whether its judgment does so reflect the truth. Lilly argues that the trial judge does not have inherent power to modify a judgment or hold a hearing in the absence of actual fraud.

We must first note that the trial court has a duty and a right to determine that its judgments are correct and accurately reflect the truth. We agree with the rationale expressed in *Montgomery v. Viers*, 130 Ky. 694, 114 S.W. 251 (1908) as to the importance placed on the judgment of a court. "The highest verity, from considerations of public policy, is attributed to the records and judgments of courts as matters of evidence" and "they ought to be most carefully preserved and authenticated." *Viers, supra.* In that case, Justice O'Rear, writing for a unanimous court, stated that common law courts from earliest times have exercised the prerogative of correcting their own judgments by their own records so as to make them conform to the original fact. *Viers.* The judgment is the last word of the law in any judicial controversy. *Hornback v. Hornback,* Ky.App., 636 S.W.2d 24 (1982), quoting from *Irvine Toll Bridge Co. v. Williams,* 223 Ky. 141, 3 S.W.2d 193 (1928).

Once the trial judge had reason to believe that there was some absence of accuracy in its judgment so that the judgment did not properly conform to the true facts of the case, the trial judge had a duty, as well as a right, to investigate by means of a hearing to determine that the judgment accurately reflected the truth. The trial judge has inherent power to execute this responsibility.

We can fully understand the reluctance of the Court of Appeals to embark on such uncharted legal waters because there are no reported cases establishing such an authority in Kentucky. However, we believe it is prudent and persuasive to consider the federal case law as expressed in *Hazel–Atlas Co. v. Hartford Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). In that patent infringement case, the United States Supreme Court held that a Federal Court of Appeals had both the duty and the power to vacate its own judgment even though the recognized time period for doing so had expired. *Hazel–Atlas,* 322 U.S. at 249, 64 S.Ct. at 1002–1003. In that decision, the court held that a court of equity may grant relief against a judgment because of after-discovered fraud regardless of the term of its entry, but such power should be cautiously exercised.

We must agree with the principles expressed by the U.S. Supreme Court that equitable relief against fraudulent judgments is not a statutory creation but a judicially devised remedy fashioned so as to relieve hardships which from time to time arise from a literal adherence to the court-made rule that judgments should not be disturbed after a certain time period has expired.

We must agree that as the court stated in *Hazel–Atlas:*

This equity rule, which was firmly established in English practice long before the foundation of our Republic, the courts have developed and fashioned to fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the term rule.

*See also Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Lake Village Water Assn. v. Sorrell,* Ky. App., 815 S.W.2d 418 (1991).

It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

*Hazel Atlas,* 322 U.S. at 246, 64 S.Ct. at 1001.

We are persuaded that there are certain implied powers which are inherent in any Court of Justice in this State which arise from the very nature of their institution. Such authority is required because they are necessary to proper exercise of all other judicial authority. As such, these powers are governed not by statute or rule, but by the control vested in the court to manage its own affairs so as to achieve the orderly and expeditious, accurate and truthful disposition of causes and cases. This principle was well

expressed in *Chambers, supra,* which quotes. with approval the early case of *United States v. Hudson,* 7 Cranch 32, 3 L.Ed. 259 (1812); *See also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). In Kentucky, such authority is vested in the sound discretion of the court in question subject to appropriate appellate review. All such authority must be exercised with great caution even though it is necessarily incidental to the function of all courts. *Cf. Ex parte Burr,* 9 Wheat 529, 6 L.Ed. 152 (1824).

■ It is obvious that along with the inherent power to set aside or correct the judgment after the time permitted by rule has expired, is the inherent power to conduct an independent investigation when there is a reasonable basis to believe that there is a possible lack of accuracy or truth in the original judgment. The Federal courts have also recognized this right of investigation so as to determine whether a judgment was obtained by fraud. *Universal Oil Co. v. Root Refining Co.,* 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946).

Here, it is necessary to conduct the requisite investigation through a court hearing to determine the true nature of the settlement between the parties so as to ensure the integrity and accuracy of the judgment of the court.

■ The inherent authority of the court goes beyond actual fraud. It encompasses bad faith conduct, abuse of judicial process, any deception of the court and lack of candor to the court. Our system depends on the adversarial presentation of evidence. Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. *U.S. v. Shaffer Equipment Co.,* 11 F.3d 450 (4th Cir.1993).

In this case, there was a serious lack of candor with the trial court and there may have been deception, bad faith conduct, abuse of the judicial process or perhaps even fraud. That is what the investigation and hearing is to determine. We cannot tolerate even the possibility of such conduct at either the trial or appellate level.

■ We note with approval the language used by Justice Scalia in his dissent in *Chambers v. NASCO, supra,* to the effect that some elements of inherent authority are so essential to the judicial authority that they are indefeasible and among them is the ability of the Court to enter orders protecting the integrity of its own proceedings.

The circumstances surrounding this case provide a reasonable basis for inquiry and investigation by the trial judge as to whether there was a possible fraud or misrepresentation of the truth reflected in the judgment. It may be unusual for a case to be submitted to a jury for decision after the parties have reached a settlement, particularly if the trial court was not fully informed. The attempt for a directed verdict regarding punitive damages, the request that a nonexistent compensatory damage phase be conducted before a punitive damage phase, the request for oral argument ground rules regarding the mention of the various damage phases and the planning discussions regarding mediation in the event of a verdict for the plaintiff and how quickly the punitive phase would follow such a verdict, the latter while the jury was still deliberating, all form the basis of legitimate concern with which to support an investigation and hearing by the trial judge.

It is our instruction that such a hearing should be conducted in camera so that appropriate confidentiality may be maintained as needed. The specific determinations of that confidentiality remain with the trial judge pending possible appeal.

We find no irreparable injury. The only result is that the truth will be revealed. The revelation of confidential settlement agreements is not irreparable injury when most of the terms have already been disclosed. In any event, there is an adequate remedy by appeal. Moreover, there is no violation of the attorney/client privilege of confidentiality or work product. The only documents subpoenaed are those disclosed to and shared by the parties.

It is the holding of this Court that a trial court has the authority and duty to determine that its judgments are correct and accurately reflect the truth in all respects. In

order to so determine, the trial court has sufficient inherent authority to conduct an investigation and a hearing to determine whether its judgments accurately reflect the truth. This right of investigation is conditioned to such circumstances where there is a reasonable basis to believe that there is a possible lack of accuracy or truth in the judgment. This inherent power goes beyond actual fraud. It encompasses bad faith, abuse of judicial process, deception of the court and lack of candor to the court. There can be no accommodation of deceit or lack of candor in any respect in the judicial process.

The decision of the Court of Appeals is reversed and the Writ of Prohibition is dissolved.

STEPHENS, C.J., BAKER, GRAVES, LAMBERT and STUMBO, JJ., and PAUL K. MURPHY, Special Justice, concur.