RENDERED: MARCH 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1261-MR

HARLAN NURSING HOME, INC.                           APPELLANT

              APPEAL FROM HARLAN CIRCUIT COURT
v.          HONORABLE KENT HENDRICKSON, JUDGE
                ACTION NO. 15-CI-00144

DAVID HOWARD, AS
ADMINISTRATOR OF THE ESTATE
OF REED HOWARD                                   APPELLEE

AND

NO. 2019-CA-1291-MR

DAVID HOWARD, AS
ADMINISTRATOR OF THE ESTATE
OF HIS FATHER, REED HOWARD           CROSS-APPELLANT

      CROSS-APPEAL FROM HARLAN CIRCUIT COURT
v.          HONORABLE KENT HENDRICKSON, JUDGE
                ACTION NO. 15-CI-00144

HARLAN NURSING HOME, INC.
D/B/A HARLAN HEALTH &
REHABILITATION CENTER; FIRST

CORBIN LONG TERM CARE, INC.;
FORCHT GROUP OF KENTUCKY,
INC.; HARLAN REALTY, LLC; AND
TERRY FORCHT                                          CROSS-APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND McNEILL, JUDGES.

McNEILL, JUDGE:  This is a wrongful death/negligence case in which Reed

Howard (hereafter "Mr. Howard") died due to complications arising from care

provided by the Appellant, Harlan Nursing Home, Inc. (hereafter "Harlan").  The

Appellee is David Howard, as administrator of the estate of Mr. Howard (hereafter

"Estate").  The Estate alleged that Harlan, through its nursing home staff, failed to

provide appropriate bowel and nutritional management, catheter, and wound care,

ultimately causing Mr. Howard's death.  The Estate also brought suit for the same

claims against Britthaven Nursing Home (hereafter "Britthaven"), which entered

into a settlement agreement with the Estate prior to trial and is not a party to this

appeal.

The present case was ultimately tried before a Harlan Circuit Court

jury in June of 2019.  At the close of the Estate's case-in-chief, the court granted

Harlan's motion for a directed verdict, therefore dismissing the Estate's wrongful

death claim.  The jury ultimately determined that Harlan was negligent and

awarded the Estate damages totaling $958,903.39, appropriating 48% fault to Harlan and 52% to Britthaven.  Harlan filed several post-trial motions, all of which were denied by the trial court.  Harlan appealed to this Court as a matter of right and raises six issues on appeal, each of which can be placed into one of two categories:  1) alleged juror misconduct attested to by post-trial juror affidavits, and 2) alleged evidentiary issues.  The Estate cross-appealed, raising two issues concerning damages.

## ANALYSIS

### A.  Alleged Juror Misconduct

First, Harlan argues that the trial court erred in denying its motion for a judgment notwithstanding the verdict (JNOV), and its motion for a new trial. One basis for its motion for a new trial is that the jury, during deliberations, was provided with deposition transcripts of one of Mr. Howard's treating physicians and one of his treating nurses. *See McAtee v. Commonwealth*, 413 S.W.3d 608, 622 (Ky. 2013) (applying harmless error review where the trial court erred by permitting the jury to take a recorded testimonial witness statement to the jury room).  In further support of its argument, Harlan contends that there was juror misconduct, including impermissible independent research apart from the evidence presented at trial, and that the jury erroneously arrived at a "quotient verdict," wherein each juror apportioned fault and one juror took the average thereof for the

final apportionment determination. Harlan also alleges that the jurors discussed Harlan's financial standing and that it was owned by a larger corporate entity, presumably relevant to Harlan's ability to pay the Estate. It is critical to reiterate that these arguments arise solely from information provided in post-trial juror affidavits.

We review a trial court's ruling on a JNOV for clear error. *Peters v. Wooten*, 297 S.W.3d 55, 65 (Ky. App. 2009). "[W]e are to affirm unless there is a *complete absence of proof on* a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ." *Storm v. Martin*, 540 S.W.3d 795, 800 (Ky. 2017) (citation omitted). However, because Harlan does not specifically challenge the sufficiency of the evidence, we need not address the trial court's denial of Harlan's JNOV motion. As to Harlan's motion for a new trial, "[t]he trial court is vested with a broad discretion in granting or refusing a new trial, and [appellate courts] will not interfere unless it appears that there has been an abuse of discretion." *Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 111 (Ky. 2012) (citations omitted); *see also Brown v. Commonwealth*, 174 S.W.3d 421, 428 (Ky. 2005) (applying abuse of discretion to review of denial of motion for new trial based on allegations of juror misconduct). We summarized the relevant law concerning alleged juror misconduct in *Crawford v. Marshall Emergency Services*

*Associates, PSC*, 431 S.W.3d 442, 445-46 (Ky. App. 2013). For the following reasons however, we need not address Harlan's claim on its merits.

Harlan does not discuss how the alleged misconduct came to the attention of counsel. The affidavits were not attached as exhibits to its post-trial motions; rather, they were filed "under seal," although it appears that this procedure was improperly observed. In its order denying Harlan's post-trial motions, the trial court notably provided the following commentary:

> This is not a circumstance in which a party files a timely "skeletal" or "placeholder" motion regarding matters *of record* to be supplemented later by more thorough argument. Here, the affidavits are the only matters that could have given any substance to the jury-misconduct portions of the motion, and they were deliberately withheld from the [Estate], and the affiants remained unidentified, long after the 10-day limit in CR[1] 59.02 had expired.
>
> . . .
>
> Worse, [Harlan] withheld the affidavits in a patent attempt to prevent [the Estate] taking [its] own steps to address the allegations.

It is unclear whether the trial court in the present case reviewed the affidavits. However, the court expressly stated in its order that it did not open the envelope containing the fourth affidavit, as it did not arrive until after the hearing on the matter and was submitted *ex parte*. Ultimately the court denied Harlan's motion

---

[1] Kentucky Rules of Civil Procedure.

for a new trial on the basis that the court was divested of jurisdiction. More precisely, the order at issue here indicates that while Harlan timely submitted its motion for a new trial, it did not submit the supporting affidavits until several days later, which violates the dictates of CR 59. *See Ligon Specialized Hauler, Inc. v. Smith*, 691 S.W.2d 902, 904 (Ky. App. 1985) ("The rule's opening language and constraints on the opposing party imply that the moving party must satisfy CR 59.02's 10 day deadline for supporting grounds and affidavits, as well as the motion itself."). We addressed a similar issue in *Young v. Dillow*, No. 2007-CA-001405-MR, 2008 WL 4092827, at *6 (Ky. App. Sep. 5, 2008). In applying *Ligon*, the Court reasoned that while "[t]he Estate presented a bare motion for a new trial within the ten-day limit . . . [t]he affidavit of Marian Roberts, a dissenting juror, was not presented until the second motion for a new trial, almost two months after judgment was entered." *Id*. Accordingly, "[t]he motion for a new trial was not timely filed and, therefore, the trial court had no discretion to consider it." Although the delay in filing the affidavits was not as extensive in the present case as it was in *Young* or *Ligon*, considering Harlan's untimely submission of the affidavits and the additional concerns addressed by the trial court, we cannot conclude that the trial court abused its discretion here by denying Harlan's motion for a new trial.

## B. Alleged Evidentiary Errors

Next, Harlan raises several evidentiary issues, arguing that the trial court erred by: 1) presenting an inflammatory photograph to the jury; 2) denying the introduction of evidence that the Estate and Britthaven resolved their differences; and 3) denying Harlan the opportunity to cross-examine the Estate's expert witness, Carol White, who did not testify live at trial. A portion of her deposition was read to the jury instead. We review a trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).

During its opening statement, the Estate presented a photograph of Mr. Howard's torn penis to the jury. Harlan did not object. Later in the trial, the photograph was shown to the Estate's first witness, to which Harlan objected. As a result, the court admonished the jury to not consider the photograph. It is well-established that "[a] jury is presumed to follow an admonition to disregard evidence[,] and an admonition is presumed sufficient to cure errors." *Parker v. Commonwealth*, 291 S.W.3d 647, 658 (Ky. 2009) (internal quotation marks and citation omitted). Based on this authority and Harlan's delayed objection, there are insufficient grounds for reversal resulting from this issue. As to Harlan's remaining allegations of error, we conclude that to the extent any error occurred, Harlan has failed to indicate that it was anything other than harmless. *See* CR

61.01; *see also McAtee*, 413 S.W.3d at 627 ("[W]e may deem the error harmless if we can say with fair assurance that the judgment was not substantially swayed by the error.") (internal quotation marks and citations omitted).

The general rule is that evidence of settlement negotiations or agreements are inadmissible. KRE[2] 408. However, there is an exception when such evidence is offered to prove "bias or prejudice of a witness . . . ." KRE 408(2). Harlan specifically cites that Mr. Howard's son, Donald Howard, changed his testimony at trial from what he had stated in his earlier deposition. Accordingly, Harlan argues that it should have been permitted to introduce evidence of the settlement agreement with Britthaven in order to demonstrate Donald Howard's bias. We agree with the Estate that although KRE 408 allows admission of such evidence under certain circumstances, the rule does not provide when such evidence *must* be admitted. Based on the reasoning provided in support of Harlan's argument on this issue, we cannot conclude that the trial court abused its discretion here.

As to Harlan's remaining evidentiary issue, we have addressed the admission of deposition testimony in lieu of live testimony as follows:

> The crux of CR 32.01 is to allow liberal use of certain depositions, such as those of physicians, but only under conditions like those that would exist if the deponent testified live at the trial. In other words, CR 32.01's

---

[2] Kentucky Rules of Evidence.

-8-

> allowance of the use of the deposition for "any purpose"
> is not expansive and cannot justify the admission of
> testimony that could not be admitted through a live
> witness. Thus, if a Civil Rule would bar a witness from
> giving certain testimony live at trial, that same rule
> would bar the testimony from coming in via a deposition.

*Hashmi v. Kelly*, 379 S.W.3d 108, 112 (Ky. 2012). There is nothing indicating that

Ms. White's live testimony would have been barred or that admitting her

deposition at trial otherwise fails to comport with CR 32.01. There is also no

indication that Harlan was unable to read to the jury the portions of the deposition

during which Ms. White was questioned by Harlan's counsel, or any other portion

thereof. Furthermore, in its order disposing of the matter, the court concluded that

Ms. White's testimony was "cumulative, a repetition of what several other

Plaintiff's witnesses said." Therefore, we cannot conclude that the court abused its

discretion here.

### C. The Estate's Cross-appeal

In its cross-appeal, the Estate argues that apportionment between

Harlan and the settling party, Britthaven, was improper. We disagree. The

apportionment of fault between the parties here comports with KRS[3] 411.182.

Granting the Estate's request for relief would result in double recovery. The Estate

further contends that the trial court improperly directed a verdict on "punitive and

---

[3] Kentucky Revised Statutes.

wrongful death damages, and the Estate is entitled to a limited retrial."  We review the trial court's decision for an abuse of discretion.  *Exantus v. Commonwealth*, 612 S.W.3d 871, 887 (Ky. 2020).

> In order to justify punitive damages there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by "wanton or reckless disregard for the lives, safety or property of others."  This bears an element not distinguishable from malice implied from the facts.

*Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985).

In its primary brief on appeal, the only evidence cited by the Estate in support of its argument that it was entitled to punitive damages is the trial testimony of Carol Cuttino, R.N., wherein after being questioned by the Estate's counsel whether she would agree that a nurse's failure to report Mr. Howard's injuries would constitute a "reckless disregard for the health and safety of the patient[,]" Ms. Cuttino responded in the affirmative.  There is nothing in the cited portion of Ms. Cuttino's testimony indicating that this was anything other than a response from a witness to a hypothetical posed by counsel.  And although in its reply brief the Estate provides additional citations to the record in support of its argument here, we cannot conclude, given the evidence and law presented, that the trial court abused its discretion by directing a verdict in Harlan's favor on the issue of punitive damages.  Lastly, it is unclear what the Estate is referring to when it claims it is entitled to "wrongful death damages" in this context.  As previously stated, the

-10-

Estate's wrongful death claim was dismissed.  Since the Estate has failed to further address this issue, we need not either.

**CONCLUSION**

For the foregoing reasons, we hereby affirm the judgment of the Harlan Circuit Court.  We also affirm the court's order denying Harlan's JNOV motion and motion for a new trial.

GOODWINE, JUDGE, CONCURS IN RESULT ONLY.

MAZE, JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

MAZE, JUDGE, CONCURRING IN PART AND DISSENTING IN PART:  While I agree with much of the reasoning and conclusions of the majority Opinion, I am deeply troubled by the allegations of jury misconduct raised by Harlan in this case.  Nevertheless, the majority correctly concludes that Harlan failed to file the affidavits supporting its motion for a new trial within the ten-day period required by CR 59.02.  As a result, the motions for JNOV and a new trial were not properly before the trial court.  Consequently, I must reluctantly agree that the trial court's denial of these motions is not properly raised on appeal.

However, this is not the end of our inquiry.  Harlan alleges that deposition transcripts were inappropriately sent back with the jury during deliberations.  And at least one juror affidavit asserts that the jury actually reviewed the discovery-deposition of Dr. Gregory Dye during its deliberations.

-11-

While Dr. Dye testified at trial, his deposition was not admitted into evidence. These allegations raise serious and compelling concerns about the integrity of the judicial process in this case.

It is well-established that a jury is not permitted to take even a witness's sworn deposition to the jury room. *Berrier v. Bizer*, 57 S.W.3d 271, 277 (Ky. 2001). The primary reason for the rule is that jurors may give undue weight to testimony contained in such a deposition and not accord adequate consideration to controverting testimony received from live witnesses. *Id.* I am far more concerned by the allegation that the depositions were provided to the jury outside of the normal court process. This allegation implies *ex parte* contact during deliberations, as well as potential jury tampering. *See Muncy v. Commonwealth*, 299 S.W.3d 281, 283-84 (Ky. App. 2009). Even if the depositions were inadvertently provided to the jury, it would still be highly improper.

Admittedly, Harlan has not developed this argument well, either before the trial court or this Court. In addition to the procedural defects discussed in the majority Opinion, the Estate notes that Harlan did not identify this as in issue on appeal in its prehearing statement. Furthermore, Harlan does not explain how this matter came to its attention following trial. And the sole affidavit raising this claim merely asserts that "depositions taken in the case were provided to the jury for their review[,]" without any explanation of how the depositions came to the

-12-

possession of the jury. While any private communication, contact, or tampering with a jury is presumptively prejudicial, the moving party must demonstrate that the alleged conduct presents a likelihood of affecting the verdict. *Bowling v. Commonwealth*, 168 S.W.3d 2, 10 (Ky. 2004).

In my opinion, the Kentucky Supreme Court's decision in *Potter v. Eli Lilly and Company*, 926 S.W.2d 449, 453 (Ky. 1996), *abrogated on other grounds by Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004), provides an outline for the proper remedy in this case. In *Potter*, the trial judge conducted a *sua sponte* inquiry into whether the parties had entered into a secret and undisclosed settlement agreement during trial. The parties objected, arguing that the trial court lacked jurisdiction to modify the judgment more than ten days after trial or without invoking the provisions of CR 60.02. *Id.* at 452. The Supreme Court declined to grant a writ of prohibition, holding:

> We must first note that the trial court has a duty and a right to determine that its judgments are correct and accurately reflect the truth. We agree with the rationale expressed in *Montgomery v. Viers*, 130 Ky. 694, 114 S.W. 251 (1908) as to the importance placed on the judgment of a court. "The highest verity, from considerations of public policy, is attributed to the records and judgments of courts as matters of evidence" and "they ought to be most carefully preserved and authenticated." *Viers*, *supra*. In that case, Justice O'Rear, writing for a unanimous court, stated that common law courts from earliest times have exercised the prerogative of correcting their own judgments by their own records so as to make them conform to the

original fact. *Viers*. The judgment is the last word of the law in any judicial controversy. *Hornback v. Hornback*, Ky. App., 636 S.W.2d 24 (1982), *quoting from Irvine Toll Bridge Co. v. Williams*, 223 Ky. 141, 3 S.W.2d 193 (1928).

Once the trial judge had reason to believe that there was some absence of accuracy in its judgment so that the judgment did not properly conform to the true facts of the case, the trial judge had a duty, as well as a right, to investigate by means of a hearing to determine that the judgment accurately reflected the truth. The trial judge has inherent power to execute this responsibility.

*Id.* at 453.

The Court went on to hold that a trial court has the inherent authority to modify or set aside a judgment based upon after-acquired information of misconduct affecting the proceedings. "The inherent authority of the court goes beyond actual fraud. It encompasses bad faith conduct, abuse of judicial process, any deception of the court and lack of candor to the court. Our system depends on the adversarial presentation of evidence. Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process." *Id.* at 454. The Court also emphasized that the trial court retains this inherent authority outside of the time limitations imposed under CR 60.02. *Id.*

By the same token, the ten-day time limit under CR 59.02 would not bar the trial court from exercising this inherent authority and fashioning an equitable remedy, if appropriate. Conduct that works a fraud or constructive fraud

-14-

on the tribunal and has a detrimental effect on the accuracy and integrity of a judgment warrants such a remedy. *Zurich Am. Ins. Co. v. Journey Operating, LLC*, 323 S.W.3d 696, 701-02 (Ky. 2010). I am extremely hesitant to disturb a jury verdict where there was substantial evidence of ongoing negligence. And I in no way wish to diminish the injuries which Mr. Howard suffered. But public confidence in the integrity of the judicial process requires further inquiry. If substantiated, Harlan's allegations would warrant setting aside the judgment. And if not substantiated, the trial court would be well within its discretion to consider whether the allegations were raised for an improper purpose. But we cannot simply look the other way.

Consequently, I would remand this matter for further inquiry and hearings into whether there was improper contact with the jury during deliberations and whether such contact affected the verdict in this case. If the trial court finds so, it should vacate the judgment, order a new trial, and grant other appropriate relief. If the court finds no improper contact with the jury, then I would agree that the judgment should be affirmed for the reasons stated in the majority Opinion.

BRIEF FOR APPELLANT/CROSS-
APPELLEE:

Donald K. Brown, Jr.
Mark E. Hammond
Morgan M. Mottley
Rachel K. Dalton
Louisville, Kentucky

BRIEF FOR APPELLEE/CROSS-
APPELLANT:

Martha Marie Eastman
Louisville, Kentucky

Kellie D. Wilson
Harlan, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky