## Jess Buchanan, Sheriff, &c., et al. v. West Kentucky Coal Company.

## Same v. Madison Coal Corporation.

(Decided February 11, 1927.)

### Appeals from Union Circuit Court.

1.  Mandamus—On Mandamus to Require Sheriff to Give Receipt for Discounted Taxes; it was no Defense that Sheriff had Not Received Tax Bills (Ky. Stats., Sections 4067, 4239(a), and Section

4148, as Amended by Acts 1926, c. 175).—Sheriff was required to accept taxes tendered before September 1st with 2 per cent. discount and give receipt in full, under Acts 1926, c. 175, amending Ky. Stats., section 4148, though tax bills had not been furnished in accordance with section 4239(a), where no showing was made that sheriff had not received copy of assessor's books or certified list, under section 4067.

2. Taxation—Statute Allowing 2 per cent. Discount on Taxes Paid Before Specified Time Held Not Unconstitutional (Ky Stats., Section 4148, as Amended by Acts 1926, c. 175).—In suit to require sheriff to give receipt for taxes tendered, with 2 per cent. discount, Ky. Stats., section 4148, as amended by Acts 1926, c. 175, allowing 2 per cent. discount on taxes paid on or before September 1st after due, held not unconstitutional as beyond legislative powers, as Legislature could authorize rebate to induce prompt payment of taxes.

3. Taxation—Any Error of Tax Commissioner in Assessing Fixtures as Personal Property Held Not Clerical, Which County Court had Jurisdiction to Correct—"Clerical Error" (Ky. Stats., Section 4250).—County court had no jurisdiction to correct assessment of tax commissioner by transferring fixtures listed as personalty to real property class, under Ky. Stats., section 4250, giving county courts authority to correct any mere clerical errors in assessment, as any error in listing fixtures as personal property involved exercise of judicial function and was not "clerical error."

4. Courts—"Clerical Error" Appearing from Face of Record May be Corrected on Application Within Reasonable Time.—Clerical error committed by court, appearing from face of record, may be corrected by appropriate application within reasonable time after adjournment of term of court in which committed; "clerical error" being inadvertence or oversight discoverable by inspection, as distinguished from error which is result of exercise of judicial function.

FRANK E. DAUGHERTY, Attorney General, CHAS. F. CREAL, Assistant Attorney General, L. C. FLOURNOY, JR., and E. R. MORTON for appellants.

W. T. HARRIS and P. H. WINSTON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on both the original and cross appeals.

By chapter 175, page 835, Session Acts of 1926, the legislature amended and re-enacted designated sections of the Kentucky Statutes, one of which was section 4148, relating to the time when certain taxes are due and payable; when they become distrainable, and providing for penalties for failure to make payment within the designated time. The amended section contained a proviso

reading: "Providing any taxpayer who pays his or her or its state, county or district taxes on or before September 1, after same becomes due in any year shall be entitled to 2% discount thereon, and the collector, in case of all such payments, will allow such reduction and give a receipt in full to the taxpayer." The appellees and plaintiffs below, West Kentucky Coal Company and Madison Coal Corporation, are corporations operating coal mines in Union county. They each applied to the sheriff of that county before September 1, 1926, and tendered to him their respective taxes less 2%, which he declined to accept, and these two actions were instituted against him in the Union circuit court seeking a mandatory order compelling him to do so.

By an amendment plaintiffs averred that after the tax commissioner had assessed their property they discovered that he had mistakenly listed certain articles as personal property when they were fixtures attached to the realty and should have been classified and listed as real estate, upon which the rate of taxation was 30 cents on each $100.00 valuation; whereas personal property bore a rate of 50 cents on the same valuation. They further alleged that after making that discovery they applied to the county court of Union county in the manner provided by section 4250 of the statutes, and it, after a hearing, transferred such wrongfully or mistakenly listed articles from the class of personal property to that of real property, and such finding was certified by the county court as provided in that section. Plaintiff, therefore, prayed that defendant be ordered to collect taxes from them only on the total valuation as so corrected by the county court, less 2%.

The sheriff, and the county, and the State Tax Commissioners, who had intervened, demurred to the petitions as amended, and the court overruled them as to the original petitions, seeking a discount of 2%, but sustained them to the amendments seeking credit by the corrections made by the county court, upon the ground that the wrongful classification of the assessed property by the tax commissioner, if any, was not a "clerical error," and, therefore, the county court had no jurisdiction under the provisions of section 4250 to make the corrections. Appellants appealed from those judgments and filed complete transcripts in this court, and defendants moved for and obtained a cross-appeal in which they complain of the court's ruling in sustaining a demurrer to their

amended petitions. The case was tried upon an agreed statement of facts, one of which was: "It is admitted by all parties that on September 1, 1926, the *tax bills* for Union county had not come to the hands of the appellant, Jess Buchanan, sheriff of Union county, said bills not having been made out and completed by the clerk of the county as provided by law, and that before that date a tender of the amount of the tax bill was made to· said sheriff by the appellees, West Kentucky Coal Company and Madison Coal Corporation, and which tender was refused by said appellant." (Our italics.)

Counsel for appellants seriously contend that under the agreed facts the court erred in adjudging plaintiffs entitled to the 2% discount, because of the provisions of section 4067 of the 1922 edition of the statutes, saying: "No sheriff shall receive or receipt for any taxes until a copy of the *assessor's books,* as approved by the board of supervisors, has been delivered to him by the county clerk, or the list filed in the county clerk's office has been certified to him by the said clerk. For a violation of this section the sheriff shall be fined one hundred dollars ($100.00) for each offense." (Our italics) Their argument is that under the inserted agreed facts appellant, as sheriff, was forbidden by the last quoted section to accept the taxes tendered to him when made, and that it was not only illegal for him to do so, but if done subjected him to a fine of $100.00 in each case. The contention, it will be observed (conceding that 4067 is applicable to the agreed fact) is upon the theory that the neglect of the proper officials to perform their duties will operate to deprive a taxpayer of the benefits to which he is entitled under express statutory provisions as a payer of taxes, but the correctness of which theory we seriously doubt. We, however, are not called upon under the agreed stipulation to determine the intricate and difficult question which that theory would present. It will be observed that section 4067 only inhibits the sheriff from receiving any taxes "until a *copy of the assessor's books,* as approved by the board of supervisors, has been delivered to him by the county clerk," or until the latter officer has furnished him with a *copy* of the filed list in his office. The purpose of that section was to prevent the collecting officer from attempting to collect taxes until the amount thereof was properly certified to him. The agreement in the stipulation *supra,* does not pretend to say that the

sheriff at the time the taxes herein were tendered to him by plaintiffs did not have in his office the *assessor's books,* or a *certified* list from the county clerk's office. It only stipulates that the *tax bills* and stubs, which the county court clerk is required to prepare and furnish by section 4239a of the 1922 edition of the statutes, had not been delivered to him, nor were they in his office at the time of the tender.

Such tax bills and stubs form no part of the *assessor's books* or the correct list of taxable property of the taxpayer as contemplated by section 4067. Such bills and stubs are in reality nothing but a copy of the tax books containing, on a separate sheet, the property assessed to each taxpayer and the amount of his taxes, with a receipt thereon to be signed by the sheriff, and perforated leaf to be detached by him and delivered to the taxpayer as a receipt when he pays his taxes. They also contain a stub which remains in the book which the sheriff is required to fill out and retain in his office. It is a requirement more for the convenience of the sheriff as collector than anything else, and there is no provision anywhere in the statute that the sheriff may not collect taxes before he is furnished such tax bills and stubs, provided he has the *assessor's books* or certified copies or lists thereof in his office. Since, therefore, it does not appear that the sheriff at the time of the tenders herein did not have such tax books in his office, reliance can not be had on section, 4067 *supra,* even if it be applicable to the present state of case, but which is not determined.

It is insisted, however, by counsel for appellants that the statute under which the 2% discount is claimed by appellees is unconstitutional and the legislature exceeded its powers enacting it. In making that contention counsel evidently overlooked (for they do not refer to it) the case of Board of Education, &c. v. Sea, 167 Ky. 772. The right to provide for a uniform and reasonable discount, having for its purpose the prompt payment of taxes, was somewhat lengthily discussed in that case, and authorities and cases, both domestic and foreign, were referred to in support of the right of the legislature to so provide within the limitations stated. A prior domestic case which is referred to in that opinion is L. & N. R. R. Co. v. City of Louisville, 16 K. L. R. 796, and we have been cited to no conflicting case, nor have we been furnished any reason why we should depart from

the doctrine of the Sea case, and this objection must be overruled.

The question on the cross-appeal involves the interpretation of a part of section 4250 of the present Kentucky Statutes saying: "County courts shall have further authority, after giving notice to the sheriff and assessor, to correct any *mere clerical errors* in the assessment, and any correction made without such notiĉe shall be void." (Our italics.) The preceding part of the section authorizes the county court upon proper application therein prescribed to correct an assessment made and returned by the tax commissioner, after it has passed beyond his control, so as to relieve the listed taxpayer from paying taxes on property that he does not own, but which, through oversight or mistake, the commissioner listed to him, and with which we are not here concerned, since no claim of that nature is involved. But appellants do insist that the action of the tax commissioner in classifying property assessed against the plaintiffs so as to make it bear the tax rate of the class in which it was listed, is not a clerical error that may be corrected by the county court in the manner provided by the section, while appellees contend to the contrary, and this is the only question presented by the cross-appeal, and its solution calls for a construction of the words "mere clerical errors" as used in the statute so as to ascertain the intention of the legislature in employing them.

"Clerical errors" are universally defined by both courts and text writers as inadvertences or oversights by the maker of the record (usually the clerks) and which are apparent on the face of the document or record in which they appear and are, therefore, discoverable by inspection. They may have been committed by the court if it attempted to perform only clerical duties, and the rule is universal that such errors so committed and so appearing from the face of the record or document containing them, may be corrected by appropriate application at any time, or at least within a reasonable one, after the adjournment of the term of court in which they were committed. Authorities and cases sustaining the above definition of a clerical error are, 11 C. J. 839; 34 C. J. 229; 15 R. C. L. 679; Brown v. Henry, 7 Ky. O. 162; Covington v. Scott, 8 Ky. O. 139; Emison v. Walker, 17 K. L. R. 238; Brashears v. Brashears, 33 K. L. R. 233; Long v. Gaines, 4 Bush 354; Bennett v. Tiernay, 78 Ky. 580, and Combs v. Deaton, 199 Ky. 477.

Mr. Freeman in the 5th edition of his standard work on Judgments, volume 1, page 283, section 146, in defining the words "clerical errors," says: " 'Clerical errors' as used in this connection ordinarily relate to the errors or omissions of the clerk in the entry of the judgment and are sometimes defined or treated as though this were the only class of cases to which the term might be properly applied. But 'clerical' is employed in a broad sense as contradistinguished from 'judicial' error and covers all errors, mistakes or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge." It will be observed that the learned author recognized the thoroughly established distinction between only a "clerical error" and one which is the result of erroneous judgment or a misapplied judicial or *quasi* judicial discretion. The former may be corrected after the judgment has become final in a summary application by an inspection of the record to be corrected and in which the clerical error appears; but the latter may not be so corrected except through some sort of provided review in the nature of an appeal. The one method of correction involves no hearing of evidence and a consequent exercise of judicial discretion, for the reason that the correction is made from an inspection of the record alone; while the other one involves the hearing of such evidence and an adjudication thereon and which presupposes an erroneous judicial or discretionary determination which the reviewing proceedings were inaugurated to correct. The same distinction is recognized in the text of 34 C. J. 247, par. 474, wherein it is said: "That an amendment after the term can not be made upon extrinsic evidence but must be based on evidence contained in the record, or *quasi* of record, at least where the error or mistake complained of is such that if it exists it should be apparent from the papers and record in the case." A number of domestic cases are cited in note 13 supporting that text, two of the latest of which are, Pond Creek Coal Co. v. Day, 187 Ky. 820, and Kendrick v. Williams, 157 Ky. 767. There are likewise cases in the same note from a great majority of the courts of the country, and the rule as so stated by the text, as well as the two other

previously cited domestic cases, seems to be practically
without exception.

The court of appeals of the state of New York, in the
case of Hermance, et al. v. Board of Supervisors, &c.,
71 N. Y. 481, had before it the same question of a strictly,
or "merely," clerical error, and one of judgment and dis-
cretion, as applicable to a tax assessment roll in a pro-
ceeding very similar to the one provided by section 4250,
*supra,* of our statutes; and in denying the right of the
appointed tribunal upon such summary application to
hear evidence and correct an error of judgment or discre-
tion under a statute providing for so corecting "manifest
clerical errors" by the assessing authorities, said: "It is
evident that the legislature did not intend to subject all
assessments to review under the act and upon every ques-
tion that could arise affecting its legality and propriety.
If it had been intended to permit a correction by this new
tribunal of all errors of judgment, errors of fact, errors
of law, jurisdictional questions, why were certain errors
specified and others of more importance omitted? It
would have been very easy to have given general power
to correct 'all errors' in the assessment or return to the
board of supervisors.

"The errors which may be corrected are 'manifest'
errors; not errors which may be shown to have been com-
mitted by extrinsic evidence or may be proved to the
satisfaction of the court. No provision is made for any
inquiry, the production of proofs, or any trial. There
would be a difficulty in determining upon proof the pro-
priety of any tax, especially in respect of personal pro-
perty after the lapse of years, when the local officers
would have been changed and all the circumstances for-
gotten by all but the applicant. The complainant would
have the public at great disadvantage in such contro-
versy. But 'manifest,' as used here, means something
which is apparent by an examination of the assessment
roll or return, needing no evidence to make it more clear.
That which is open, palpable, and I might add, incontro-
vertible. It is synonymous with evident, visible, plain,
obvious to the understanding from an examination of the
roll or document; or, at the most, only requiring a mathe-
matical calculation to demonstrate it."

The doctrine of that case was referred to and ap-
proved in the later one of Chamberlain v. Forrest, 96
N. Y. 544, and the court in that opinion said: "Clerical

errors are mentioned to distinguish them from, and exclude errors of substance, of judgment, or of law," and the same court in the still later case of People v. Wilson, 119 N. Y. 515, approved the reasoning of the two cited prior opinions of that court. In all three of those cases the court had under consideration a statute of the state of New York enacted in 1869 providing for the corrections of a manifest clerical error made by the assessor of property for taxation and which is the same relief as that portion of section 4250 now under consideration provides for, and, as we have seen, it held that the correction could not be made in that manner by the forum appointed for the purpose where it, in order to make the correction, would be compelled to hear extrinsic evidence.

In this case the tax commissioner of Union county in the exercise of his *quasi* judicial discretion classified certain property belonging to appellees as personal property, which, if true, bore a higher rate of taxation than if it was classified as real property. Whether or not he correctly or incorrectly did so involves a judicial inquiry and a determination of the facts as well as the law applicable thereto, none of which would be necessary in the correction of a "mere clerical error" apparent from the record. We are the more convinced of the correctness of our position in the light of the fact that the legislature used the qualifying word "merely," thereby indicating a purpose to limit the clerical error that might be so corrected to one that was strictly or unmistakably so.

It is, therefore, our conclusion that the county court of Union county was without jurisdiction to make the corrections complained of and that the circut court properly so held.

Wherefore, the judgment is affirmed both on the original and cross appeal.