Charles CARDWELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1997–SC–0258–DG.

Supreme Court of Kentucky.

Feb. 24, 2000.

Charles Cardwell, Burgin, pro se.

A.B. Chandler, III, Attorney General of Kentucky, William L. Daniel II, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for appellee.

JOHNSTONE, Justice.

Appellant, Charles Cardwell, appeals from a Court of Appeals' decision denying him relief pursuant to RCr 11.42. We affirm.

Cardwell was involved in a car crash on November 20, 1993, in which one person was killed and another person was seriously injured. Tests revealed that Cardwell's blood alcohol content was .31%. Cardwell was charged with murder and first-degree assault. On December 1, 1993, a warrant was issued for his arrest and he was taken into custody two days later.

At the time of the crash, Cardwell had two separate charges pending against him for operating a motor vehicle under a revoked or a suspended license. The dates for the two charges were January 8, 1993, and June 3, 1993. Cardwell pled guilty to the first charge on December 7, 1993, and received a two-year sentence. He pled guilty to the second charge on December 10, 1993, and received a three-year sentence. The sentences were ordered to be served consecutively for a total of five years. Cardwell then was turned over to the custody of the Department of Corrections to start serving his sentence.

Cardwell was tried on the murder and assault charges in late 1994. A jury found him guilty of second-degree manslaughter and fourth-degree assault and recommended sentences of ten years and one year, respectively. The trial court accepted the jury's recommendation and ordered that the sentences for manslaughter and assault were to be served concurrently for a total of ten years. The trial court then ordered that this ten-year sentence was to be served consecutively to the five-year sentence for Cardwell's two prior convictions for operating a motor vehicle under a revoked or a suspended license. The total time to be served was fifteen years. These events occurred in open court with Cardwell present.

The videotaped record is clear that these statements were made. Handwritten notes on the court's docket sheet confirm that this was the sentence rendered by the trial judge from the bench. However, the trial court's written Judgment and Sentence differed from the sentence pronounced from the bench. Entered into the record six days later, it made no mention that the ten-year sentence was to be served consecutively to the previous five-year sentence.

Cardwell was already in custody serving time on the five-year sentence when he came to trial for the murder and assault charges arising out of the crash of November 20. After judgment was rendered on the manslaughter and assault convictions, the Department of Corrections calculated Cardwell's release date on the ten-year sentence in accordance with KRS 532.110(2). That statute provides that if a judgment does not specify the manner in which a sentence is to run, then that sentence is deemed to run concurrently with any other sentence which the defendant is required to serve.

In August 1995, the trial court entered an Amended Judgment and Sentence, which reads in pertinent part:

AND IS SENTENCED TO:

Ten (10) years on Manslaughter, Second-degree and Twelve (12) months and $500.00 fine on Assault, Fourth-degree, *concurrently with each other but consecutively with previous sentences of five (5) years (for a total of fifteen years)*.

The above, emphasized language was added to the amended judgment and was not included in the original judgment. By adding this language, the trial court effectively increased Cardwell's sentence by five years.

The amended judgment was entered over eight months after the original judgment and sentence had become final. On the basis of the amended judgment, the Department of Corrections recalculated Cardwell's release date to a much later point in time.

If this were a civil action, there would be no question about the trial court's authority to enter the amended judgment pursuant to CR 60.01. As we stated in *Potter v. Eli Lilly and Company*, Ky., 926 S.W.2d 449 (1996):

We are well aware that CR 60.01 allows a trial court to correct clerical mistakes in its judgments and errors therein arising from an oversight or omission at any time on its own initiative. We do

not believe CR 60.01 invests the trial court with either jurisdiction or authority to make substantive changes in a judgment. The effect of the rule is limited to mistakes that are clerical in nature.

*Id.* at 452. Moreover, a trial court has the inherent power to enter orders *Nunc Pro Tunc. Happy Coal Company v. Brashear*, Ky., 263 Ky. 257, 92 S.W.2d 23, 28 (1936).

█ RCr 10.10 has been in place since 1962. When originally adopted, it was the mirror image of CR 60.01. Only one minor change has been made to it since its adoption, and is not pertinent in this case. At the time the rule was adopted, the commentary only stated that "RCr 10.10 is new and is the same as CR 60.01." Clearly, the failure to include the provision that Cardwell's ten-year sentence for manslaughter and assault was to be served consecutively to the five-year sentence for the two prior convictions, was a simple clerical error. Thus, the trial court had the authority to correct its judgment pursuant to RCr 10.10.

█ In spite of the dissent's argument to the contrary, the distinction between clerical error and judicial error does not turn on whether the correction of the error results in a substantive change in the judgment. Rather, the distinction turns on whether the error "was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel, or by the judge." *Buchanan v. West Kentucky Coal Company*, Ky., 218 Ky. 259, 291 S.W. 32, 35 (1927). "A clerical error involves an error or mistake made by a clerk or other judicial or ministerial officer in writing or keeping records...." 46 Am.Jur.2d, Judgments § 167. The omission in the original judgment of a provision that Cardwell's sentence was to run consecutive with his previous sentence was a mistake made in reducing the oral judgment to writing. The omission was not the product of judi-

cial reasoning and determination. It was a clerical error.

That this is the correct result can be demonstrated by briefly examining the reverse situation in which a trial court orally sentences a defendant to a term that is to be served *concurrently* with another sentence. However, due to a clerical error, the written judgment specifies that the defendant's sentence is to be served *consecutive* to the other sentence. It would be fundamentally unfair to declare that, in such a situation, the written judgment controlled the oral judgment, and, thus, the written judgment was not subject to correction under RCr 10.10. Since the rule makes no distinction between correction of errors that favor a defendant and those that work to a defendant's detriment, it should be applicable in either case.

The determination that correction of Cardwell's sentence was proper under the rule leaves the question of whether correction of the sentence was constitutional. The constitutional concerns in this case arise from the fact that CR 60.01 applies to civil cases whereas RCr 10.10 applies to criminal cases. Specifically, we must determine whether entry of the amended judgment violated Cardwell's right to due process or double jeopardy principles.

### DOUBLE JEOPARDY

■ The application of the double jeopardy clause to increase a prisoner's sentence turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. *United States v. Fogel,* 829 F.2d 77, 87 (D.C.Cir.1987). If a defendant has a legitimate expectation in the finality of his sentence, then an increase in that sentence violates double jeopardy. *Id.* In other words, jeopardy only attaches to a sentence if the defendant has a legitimate expectation of the finality of that sentence. Thus, a defendant has no legitimate expectation in the finality of his sentence when the government has the right to appeal and the time to appeal has not yet expired, *United States v. DiFrancesco,*

449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Collins v. Commonwealth,* Ky., 973 S.W.2d 50 (1998), where the defendant's sentence is illegal or unauthorized by statute, *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), or where the defendant deceived or committed fraud upon the trial court during sentencing. *United States v. Jones,* 722 F.2d 632 (11th Cir.1983); *State v. Hardesty,* 129 Wash.2d 303, 915 P.2d 1080 (1996); *Goene v. State,* 577 So.2d 1306 (Fla.1991); *State v. Delmondo,* 67 Haw. 531, 696 P.2d 344 (1985).

Therefore, the question we must answer is whether Cardwell had a legitimate expectation in the finality of his sentence. We believe that under the facts of this case, he clearly did not have a legitimate expectation of finality. Thus, we hold that the increase in Cardwell's sentence via the amended judgment did not violate double jeopardy principles.

Cardwell was present in open court when the trial judge pronounced that the ten-year concurrent sentences for manslaughter and assault were to be served consecutively to the five-year sentence for the two convictions for operating a motor vehicle under a revoked or a suspended license. The fact that the written judgment was silent that the ten-year sentence was to be served consecutively with the previous five-year sentence came as a fortuitous and undeserved windfall for Cardwell. The omission in the written judgment cannot serve to create the *legitimate* expectation that the error was beyond correction. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza,* 330 U.S. at 166–67, 67 S.Ct. at 649.

### DUE PROCESS

■ Finally, under the facts of this case, entry of the amended judgment did not violate Cardwell's right to due process. This can be seen by comparing this case with two other cases in which we found

that an increase in the defendant's sentence violated due process.

In *Hord v. Commonwealth*, Ky., 450 S.W.2d 530 (1970), the appellant pled guilty on May 6, 1968, to a charge of breaking and entering, which plea was accepted by the trial court. The appellant was then sentenced to one year in prison. On June 15, 1968, he was placed on probation. On January 6, 1969, the trial court revoked the appellant's probation and resentenced him to two years' imprisonment. The *Hord* Court concluded that the increase in the appellant's sentence violated due process. "Due process of law ... must be followed to insure a valid conviction of his felonious charge. Due process does not contemplate that months or years later his 'trial' may be opened and a greater punishment imposed. *See also North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656." *Id.* at 531–32.

In *Dublin v. Osborne*, Ky., 388 S.W.2d 588 (1965), the appellant was convicted of two separate charges. He was sentenced to one year in prison on each conviction. Each case was appealed and both judgments were affirmed.

The appellant was convicted of the first charge on October 11, 1962, and remained on bond pending appeal. The appellant was convicted on the second charge on February 28, 1963. The judgment of conviction in the second case provided that the sentence for the second conviction was to be served *concurrently* with his sentence for his conviction in the first case. An appeal was taken from the second conviction. While the appeal was pending, the trial court entered an order allegedly correcting the judgment, which provided that the appellant's sentence for his conviction in the second case was to be served *consecutively* to his conviction in the first case. After noting that the appellant had already fully satisfied the judgment from his first case, the *Dublin* Court stated that it was "manifestly improper to impose" additional confinement on him. *Id.* at 591.

Important to the *Dublin* Court's holding was its strong suspicion that the trial court may have arbitrarily increased the appellant's sentence via the alleged corrected judgment:

> It is true that the trial court has judicial discretion whether to impose sentences that will run concurrently or consecutively, and to some extent it may be reasoned that the imposition of concurrent sentences is a matter of judicial "grace." But that does not solve the problem. By parity of reasoning, the trial judge has discretion in fixing the extent of imprisonment when a case is submitted without the intervention of a jury. We suppose it would not be contended that the trial court could impose a one year sentence, see it served, and then conclude that he meant to make it two years and thereby cause the reincarceration of the defendant who had already "paid in full" the actual sentence imposed. In our view, that is the true state of affairs here. Under this state of the record, we have no recourse except to grant the relief sought.

*Id.*

The dissent finds no suggestion of perceived vindictiveness on the part of the trial judge in the above-quoted passage. It contains more than a suggestion. The statement, "In our view, that is the true state of affairs here," is an affirmative declaration by the *Dublin* Court expressing its belief that the trial judge corrected the judgment not to reflect the original judgment imposed, but, rather to reflect a change in the trial judge's opinion that Dublin had not served a sufficient amount of time for his crimes. That this was the *Dublin* Court's view is further strengthened by the fact that the *Dublin* Court specifically declined to consider "whether the present situation is appropriately an instance of an order *nunc pro tunc*." *Id.* at 590.

What is present in both *Hord* and *Dublin*—and what is lacking in the present case—is the specter of vindictiveness.

The *Hord* Court's reliance on *North Carolina v. Pearce, supra,* shows that the possibility that the appellant's sentence may have been increased due to a vindictive or retaliatory motive on the part of the trial judge was important to the holding in *Hord.*

In *Pearce,* the U.S. Supreme Court held:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Pearce,* 395 U.S. at 725, 89 S.Ct. at 2080, 23 L.Ed.2d at 669. And of course, the *Dublin* Court openly expressed its belief that, upon reconsideration of the original sentence, the trial court arbitrarily increased the appellant's sentence after the fact.

In the case at bar, the trial judge merely corrected a clerical error in the written judgment. The record does not even hint that the trial court corrected the judgment out of a vindictive or retaliatory motive. Further, the correction came as no surprise to Cardwell.

■ It is clear that the possibility of vindictiveness and retaliation is important to the due process analysis. "[T]he Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628, 634 (1974). While this case does not concern an increase in Cardwell's sentence upon retrial after a successful appeal, we believe that the absence of the possibility of vindictiveness or retaliatory motive by the trial court, eliminates any due process concerns in the case at bar.

Finally, contrary to the conclusion drawn by the dissent, we believe that KRS 533.060(3) does provide grounds for overruling Cardwell's RCr 11.42 motion. KRS 533.060(3) states:

When a person commits an offense while awaiting trial for another offense, and is subsequently convicted or enters a plea of guilty to the offense committed while awaiting trial, the sentence imposed for the offense committed while awaiting trial shall not run concurrently with confinement for the offense for which the person is awaiting trial.

As noted above, Cardwell had two pending charges against him at the time he committed the offense which is the subject matter of this appeal. As Cardwell eventually pled guilty to these charges, straightforward application of the statute mandates that Cardwell's sentences be run consecutively. In other words, the statute deprived the trial court of the discretion to run Cardwell's sentences concurrently. *See Riley v. Parke,* Ky., 740 S.W.2d 934, 935 (1987).

In *Riley,* as in the case at bar, the written judgment was silent as to whether the appellants' sentences were to be run concurrently or consecutively. *Id.* at 935. However, unlike the case at bar, the Corrections Cabinet set the sentences to run consecutively pursuant to the dictates of KRS 533.060. *Id.* The issue addressed on appeal was whether the Corrections Cabinet exceeded its authority in setting the appellants' sentences to run consecutively. *Id.* We reasoned that KRS 533.060 controls over KRS 532.110(2) which provides:

If the court does not specify the manner in which a sentence imposed by it is to run, the sentence shall run concurrently with any other sentences which the defendant must serve.

*Id.*

On appeal, the appellants argued that the power to determine the length of their

sentences belonged exclusively to the purview of the trial court. *Id.* at 936. We disagreed and held that the "application of KRS 533.060(2) is essentially administrative in nature, and is certainly properly included in the duties of the Corrections Cabinet." *Id.* Thus, under *Riley*, the statute controls over the written judgment. Therefore, the relevant question is whether the Corrections Cabinet appropriately set Cardwell's sentences to be run concurrently. The question of whether the trial court had the authority to correct its judgment pursuant to RCr 10.10 is simply of no consequence to Cardwell's case under the *Riley* analysis.

Consequently, under the facts of this case, we hold that entry of the amended judgment did not violate Cardwell's due process rights or violate double jeopardy principles.

GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion, with LAMBERT, C.J., and STUMBO, J., joining that dissent.

COOPER, Justice, dissenting.

Following his trial by jury on December 2, 1994, Appellant expressed satisfaction with the jury's verdict, waived a separate sentencing hearing, and requested that he be sentenced forthwith. The trial judge stated that he would impose the ten-year sentence fixed by the jury and that he would order the sentence to run consecutively with the five years Appellant was already serving. The trial judge also made a written notation to that effect on the court calendar. Significantly, he further advised Appellant that he would award him his jail credit time, if any, "in the final judgment." The final judgment, which was entered on December 8, 1994, was silent as to whether the ten-year sentence would run concurrently or consecutively with the previous five-year sentence. Thus, the sentences were required to run concurrently.

If the court does not specify the manner in which a sentence imposed by it is to run, the sentence shall run concurrently with any other sentence which the defendant must serve.

KRS 532.110(2).

No appeal was taken from the judgment and it became final ten days after its entry. *Silverburg v. Commonwealth,* Ky., 587 S.W.2d 241, 244 (1979). More than eight months later, on August 22, 1995, the trial judge entered an amended judgment *sua sponte* and without any notice to Appellant. The amended judgment ordered the ten-year sentence imposed in this case to run consecutively with Appellant's previous five-year sentence, thereby increasing the total amount of time to be served from ten years to fifteen years.

Contrary to the suggestion in the majority opinion, the trial judge's oral pronouncements from the bench on December 2, 1994 do not take precedence over the written judgment entered on December 8, 1994. While that might be the rule in federal courts, *United States v. Becker,* 36 F.3d 708 (7th Cir.1994), the rule in Kentucky is that when there is an inconsistency between oral statements of the presiding judge and an order or judgment reduced to writing, the written order or judgment prevails. RCr 13.04; CR 54.01; *Commonwealth v. Taber,* Ky., 941 S.W.2d 463, 464 (1997); *Commonwealth v. Hicks,* Ky., 869 S.W.2d 35, 37–38 (1994).

When there is an inconsistency between oral statements of a court and an order reduced to writing, the latter must prevail. Assuming for the sake of argument that the statements are inconsistent, if they could be used to, in effect, impeach the trial court's written order, "the result would be the destruction of any certainty as to the effect of judgments and a state of chaos in judicial proceedings."

*Taber, supra,* at 464 (quoting *Hicks, supra,* at 38). Nor could the notation on the court calendar qualify as a judgment, since

it did not include all of the requirements of RCr 11.04(1).

The majority opinion also contravenes a previously unbroken line of precedents which hold that a trial judge loses jurisdiction to amend a judgment in a criminal case ten days after its entry. *Commonwealth v. Gross,* Ky., 936 S.W.2d 85 (1996) (judgment could not be amended twenty-one months later to probate the sentence); *Commonwealth v. Marcum,* Ky., 873 S.W.2d 207 (1994) (judgment could not be amended fifty-three days later to increase the sentence from five years to ten years); *Silverburg v. Commonwealth, supra* (judgment could not be amended thirty-eight days later to reduce the sentence from one year to ten months); *McMurray v. Commonwealth,* Ky.App., 682 S.W.2d 794 (1985) (judgment could not be amended forty-three days later to increase the sentence from one year probated to five years without probation). The majority's reliance on *Potter v. Eli Lilly and Co.,* Ky., 926 S.W.2d 449 (1996) is misplaced.

> *Potter* does not do away with the rules of finality, nor does it nullify the ten-day rule of CR 59.05 or expand CR 60.02. *Potter* recognizes a very narrow exception to the rules of finality. It applies only in the extraordinary circumstances where a fraud has been perpetrated upon the court. "It encompasses bad faith conduct, abuse of judicial process, any deception of the court and lack of candor to the court."

*Gross, supra,* at 88 (quoting *Potter, supra,* at 454).

The majority opinion finesses all of these existing precedents by holding that the failure of the trial judge to include in the final judgment an order requiring that the sentence run consecutively with Appellant's previous five-year sentence was a mere "clerical error" correctable "at any time." RCr 10.10. From this dubious conclusion, I vigorously dissent. In *Dublin v. Osborne,* Ky., 388 S.W.2d 588 (1965), the defendant was convicted and sentenced to one year in prison on each of two charges, which were tried separately. The judgment entered on the second conviction recited that the sentences for the two convictions were to run concurrently. Eight months later (coincidentally) and without notice to the defendant (coincidentally), the trial judge entered an order amending the second judgment to require the sentences to run consecutively, thereby increasing the total amount of time to be served from one year to two years. On appeal, the circuit clerk filed an affidavit stating that the minute book (which, similar to our present-day court calendar, was a memorandum prepared in open court to summarize the proceedings) reflected that the judge had ordered the sentences to run consecutively; but that "[t]hrough inadvertence and error," the final judgment prepared by the clerk erroneously reflected that the sentences were to run concurrently. Finding this amendment of the judgment to be "a matter of material substance," *id.* at 591, our predecessor court held that the amendment was "improper, untimely and illegal." *Id.* at 590. Contrary to the majority's interpretation of *Dublin,* nothing therein suggests that the decision was based on a perceived vindictiveness on the part of the trial judge. Rather, it is apparent that the amendment was made to correct the clerk's mistake as reflected by the clerk's affidavit.

As the majority points out, RCr 10.10 was intended to operate similarly as CR 60.01 operates in civil cases. (Of course, as the majority also points out and as will be discussed *infra,* the amendment of a judgment to increase the penalty in a criminal case has both due process and double jeopardy implications.) Nevertheless, there is a distinction between clerical errors and judicial errors. For example, mistakes involving dates are considered clerical errors. *E.g., Commonwealth, Dep't of Highways v. Richardson,* Ky., 424 S.W.2d 601 (1967); *Commonwealth, Dep't of Highways v. Daly,* Ky., 374 S.W.2d 497 (1964); *Citizens Bank & Trust Co. v. McEuen,* 281 Ky. 113, 134 S.W.2d 1012

(1939). So, too, are mathematical errors. *E.g., Weil v. B.E. Buffaloe & Co.,* 251 Ky. 673, 65 S.W.2d 704 (1933). On the other hand, mistakes involving matters of substance are considered judicial errors. In *Wides v. Wides,* 300 Ky. 344, 188 S.W.2d 471 (1945), the parties to a divorce action had entered into an agreement which provided *inter alia* that the· husband would pay alimony to the wife during the *husband's* lifetime or until the wife remarried. Through an unexplained error, the trial judge entered a judgment awarding alimony to the wife during the *wife's* lifetime or until she remarried. Upon the husband's death, the wife sought a judgment against his estate for continued payment of the alimony award. Relying on common law principles subsequently codified as CR 60.01, the trial judge amended the judgment to conform to the parties' agreement. On appeal, it was held that the amendment had altered the substance of the judgment; and that the alimony provision in the original judgment was not a clerical error, but a judicial error, which could not be corrected by collateral action "[e]ven if the judgment was not what the judge intended to be entered." *Id.,* 188 S.W.2d at 474. The facts of this case are conceptually the same as in *Wides* and almost exactly the same as in *Dublin, supra.* Increasing the defendant's punishment from ten years to fifteen years was "a matter of material substance," *Dublin, supra,* at 591, which altered the substance of the judgment, *Wides, supra,* 188 S.W.2d at 474, thus was not a clerical error, but a judicial error, which could not be corrected by collateral action. *Id.*

The majority opinion's reliance on *Buchanan v. West Kentucky Coal Co.,* 218 Ky. 259, 291 S.W. 32 (1927) is misplaced. *Buchanan* did not involve an error in a judgment, but an error in a tax assessment. The error was an incorrect classification of certain property as personal property rather than real property, which resulted in a higher tax rate. In holding that the incorrect classification was not a "clerical error," our predecessor court stated as follows:

"Clerical errors" are universally defined by both courts and textwriters as inadvertences or oversights by the maker of the record (usually the clerks), and which are apparent on the face of the document or record in which they appear, and are, therefore, discoverable by inspection. They may have been committed by the court, *if it attempted to perform only clerical duties,* and the rule is universal that such errors so committed, *and so appearing from the face of the record or document containing them,* may be corrected by appropriate application at any time, or at least within a reasonable one, after the adjournment of the term of court in which they were committed.

*Id.,* 291 S.W. at 35 (emphasis added). Not only was the trial judge in the case *sub judice* performing a judicial duty as opposed to a clerical one, his error, if any, was substantive and not apparent from a mere examination of the face of the record. But even if *Buchanan* could be interpreted as holding contrary to *Wides v. Wides, supra, Wides,* being the later case, would control. *Smith v. Overstreet's Adm'r,* 258 Ky. 781, 81 S.W.2d 571, 572 (1935).

More importantly, the amendment of the judgment in this case violated Appellant's constitutional rights to due process of law and protection against double jeopardy. U.S. Const. amends. V, XIV; Ky. Const. §§ 13, 14. In *Hord v. Commonwealth,* Ky., 450 S.W.2d 530 (1970), the defendant entered a guilty plea to storehouse breaking and was sentenced to one year in prison. The sentence was probated. When the defendant violated the conditions of his probation eight months later (coincidentally), the trial judge revoked his probation and increased his punishment to two years. Although the language of KRS 439.300(1) (repealed, 1974 Ky.Acts ch. 406 § 336) provided that upon revocation of probation, the trial judge "may impose any sentence which might have been imposed

at the time of conviction," it was held that imposition of the increased sentence was unconstitutional.

> If he was tried and judgment entered fixing his punishment at one year, he has been once placed in jeopardy for the offense charged. He cannot be again placed in jeopardy for the same offense. Constitution of Kentucky, § 13.

> Due process of law (Constitution of the United States, Amend. 14, § 1 and Constitution of Kentucky, § 14) must be followed to insure a valid conviction of his felonious charge. Due process does not contemplate that months or years later his "trial" may be opened and a greater punishment imposed.

*Hord v. Commonwealth, supra,* at 531–32; *see also United States v. Benz,* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) (trial court has the power to amend a sentence during the court session in which it was entered, but only to mitigate the punishment and not to increase it, for the latter would constitute double punishment).

The majority asserts that an exception to this rule occurs if the defendant did not have a legitimate expectation in the finality of his sentence, and cites *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947) for the proposition that a defendant has no legitimate expectation in the finality of a sentence which is illegal or unauthorized by statute. [Although not cited by the trial judge as grounds for overruling Appellant's RCr 11.42 motion for relief from the amended judgment, and not mentioned in either the Court of Appeals' opinion or in any of the briefs filed by the Commonwealth, the sentence imposed in the December 8, 1994 judgment may have been contrary to KRS 533.060(3) (sentence for an offense committed while awaiting trial for another offense cannot run concurrently with the sentence for the other offense). *Commonwealth v. Martin,* Ky.App., 777 S.W.2d 236 (1989). Nevertheless, as in *Commonwealth v. Martin* and *Commonwealth v. Gross, supra,* the Commonwealth could have sought correc-

tion of the error by filing a timely appeal.] Regardless, *Bozza v. United States, supra,* represented a narrow departure from the line of cases beginning with *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873) and including *United States v. Benz, supra,* which hold that although a criminal judgment can be amended *during the term of court in which it was rendered* to decrease the defendant's punishment, it cannot be so amended to *increase* the punishment without violating the proscription against double jeopardy. In *Bozza,* the defendant was convicted of an offense which carried a penalty of imprisonment and a minimum mandatory fine of one hundred dollars. The judge imposed only the prison sentence and inadvertently failed to impose the fine. *Five hours later,* the judge recalled the defendant and corrected the error by imposing the additional punishment of a one hundred dollar fine. *Bozza* stands only for the proposition that an illegal or unauthorized sentence may be corrected *during the term of court in which it was rendered* even if the correction results in an increase of the sentence. The holding in *Bozza* is not inconsistent with the holdings in our cases, cited *supra,* that a judgment can be amended only during the period prior to the running of the time for appeal.

Relying on the unbroken line of precedents cited in this opinion, Appellant had a legitimate expectation of finality with respect to the judgment of December 8, 1994. The fact that the trial judge may have previously stated in open court his intent to enter a different judgment than the one subsequently entered is of no consequence. The judge, himself, indicated to Appellant when discussing jail credit time that the final judgment would be entered at a later date, as, indeed, it was. Why should Appellant be charged with knowledge that the trial judge did not simply change his mind on the issue of concurrent or consecutive sentences?

The amended judgment was entered without jurisdiction and in violation of Ap-

pellant's constitutional rights to due process of law and protection against double jeopardy. Accordingly, I would reverse this case and remand it to the Christian Circuit Court with directions to vacate the amended judgment of August 22, 1995 and to reinstate the judgment of December 8, 1994.

LAMBERT, C.J., and STUMBO, J., join this dissenting opinion.