JAVIER STEEL CORPORATION,
Appellant,

v.

CENTRAL BRIDGE COMPANY,
LLC., Appellee.

No. 2009–CA–002124–MR.

Court of Appeals of Kentucky.

Jan. 14, 2011.

Discretionary Review Denied by
Supreme Court Nov. 16, 2011.

Galen L. Clark, Louisville, KY, for appellant.

John William Woodard, Jr., Sara Veeneman, Louisville, KY, for appellee.

Before ACREE, Judge; HENRY and ISAAC,[1] Senior Judges.

## OPINION

ACREE, Judge:

The appellant, Javier Steel Corporation (Javier), appeals from the judgment of the Jefferson Circuit Court which found Javier was unjustly enriched when appellee, Central Bridge Company, LLC (CBC), overpaid Javier; Javier was ordered to reimburse $402,423.26 to CBC. We affirm.

### Facts

CBC is a bridge and road construction contractor and Javier is a steel subcontractor. Between 1999 and 2002, pursuant to highway contracts funded by the federal and state governments, CBC contracted with Javier to provide materials and labor for road works projects throughout the Commonwealth. The agreements at issue provided that Javier would provide labor and materials at each of seven locations and that CBC would pay Javier as follows:

Contract # 1(Madison Co.)—$653,226.77

Contract # 2 (Scott Co.)—$136,003.40

Contract # 3 (Boone Co.)—$370,440.40

Contract # 4 (Lexington–Covington Road)—$117,683.12

Contract # 5 (Henry Clay Blvd.)—$107,802.73

---

1. Senior Judges Michael L. Henry and Sheila R. Isaac sitting as Special Judges by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky revised Statutes (KRS) 21.580. Senior Judge Henry concurred in this opinion prior to the expiration of his term of senior judge service. Release of the opinion was delayed by administrative handling.

Contract # 6 (Paris–Covington Rd.)—$234,601.37

Contract # 7 (Lexington–Catlettsburg Rd.)—$391,809.88

These seven contracts allowed for alternative methods of assuring payment to third-party materials vendors. When Javier procured materials from third-party vendors, it was supposed to pay third-party vendors out of the amounts received under the contracts from CBC. Alternatively, the contracts authorized CBC to make arrangements with third-party vendors and pay them for the materials directly. If CBC paid vendors directly for materials, it was entitled to reduce the payments made to Javier by the amount paid to the third-party vendors.

When CBC made a change to its accounting software, this contract-payment flexibility resulted in mistaken overpayments to Javier. Three sets of circumstances that led to overpayments are outlined below.

The dispute concerning Contract # 1 arose because Javier simply was paid in excess of the amount contracted. The circuit court found CBC had paid Javier $16,517.26 over and above the agreed upon contract amount and that Javier had not performed any additional work to warrant the payment. Accordingly, the circuit court found that CBC was entitled to recover the overpayment from Javier.

The issue with Contract # 2 concerned a double payment by CBC to Javier for work that Javier had performed only once. The court found Javier had performed work according to the contract and had been fully paid under the contract. However, Javier mistakenly double-billed CBC and CBC paid the sum of $16,800.00 a second time for the same work for which it had already compensated Javier. Javier was therefore required to repay CBC the $16,800.00 overpayment.

With regard to the final five contracts, CBC made arrangements to pay certain third-party materials vendors directly yet still paid Javier the full payments due under the contracts (labor *and materials*) without deducting from the payments to Javier the amounts of the direct payments to third-party vendors. At trial, CBC presented evidence of the direct payments for materials to vendors and the concomitant double payment for the same materials to Javier. Javier produced no evidence that it had in fact paid the vendors for the materials out of the payments it received from CBC. The trial court concluded that Javier had retained the funds that were intended for the vendors and was therefore unjustly enriched. The overpayments for the five remaining contracts totaled $514,288.98.

The circuit court found that CBC's overpayments to Javier totaled $547,606.54. Prior to trial, CBC had set off $145,183.28 of this amount against subsequent contract payments owed to Javier.

### Procedural History

A bench trial was held over three days in July and August 2005. In September 2006, because there had been no activity in the file, the clerk of the court, apparently without determining that the case was under submission, sent the parties a Notice to Dismiss for Lack of Prosecution. In an effort to correct the clerk's mistake, the parties made their way back before the circuit judge who, in a November 9, 2006 hearing, acknowledged that the Notice had been issued in error.

The parties waited another six months, anticipating a decision in the case. It then came to the parties' attention that on November 9, 2006, the circuit judge had mistakenly signed the order dismissing the case for lack of prosecution but the clerk

had not noticed the parties. On May 9, 2007, CBC moved to vacate that order. A hearing was held and on May 14, 2007, the circuit court vacated the mistaken order of dismissal stating in the order that the court was relying on the authority of Kentucky Rules of Civil Procedure (CR) 60.01 and CR 60.02.

On March 17, 2008, the circuit court finally ruled on the merits of the case, issuing Findings of Fact and Conclusions of Law in accordance with CR 52.01. The judgment was in CBC's favor. Javier timely filed a Motion to Alter, Amend or Vacate Judgment or for Judgment Notwithstanding the Verdict. This motion was denied by order entered October 15, 2009. Javier filed a timely Notice of Appeal to this Court.

In its appeal, Javier contends that CBC did not overpay it, and that it was paid according to the contract terms. Javier further asserts that CBC has unclean hands and that if CBC were allowed to recover from Javier, CBC would be violating federal law and committing a fraud against the state and federal governments to which CBC had made representations regarding payments to Javier. Javier also appealed the trial court's vacating of its order to dismiss.

### Standard of Review

This case was tried without a jury, the circuit judge acting as fact-finder. An appellate court will set aside a circuit court's findings of fact only if those findings are clearly erroneous. CR 52.01. In sum, only if reasonable minds could not differ with Javier's contention that it was not overpaid will we set aside the circuit court's findings of fact on this point.

■ Legal conclusions, however, are subject to *de novo* appellate review. "Questions of law are reviewed anew by this Court." *Daniels v. CDB Bell, LLC,* 300 S.W.3d 204, 210 (Ky.App.2009). The theory of unjust enrichment is an equitable doctrine, *Dodson v. Key,* 508 S.W.2d 586 (Ky.1974), and the application of an equitable doctrine to the facts of a case is a question of law. *Daniels,* 300 S.W.3d at 210. Therefore, the question as to whether Javier was unjustly enriched will be "reviewed anew by this Court." *Id.* at 209.

### Analysis

*Order Vacating Order of Dismissal Was Not Error or Abuse of Discretion*

■ Because of its procedural nature and capacity for making all other issues moot, we address Javier's final argument first. Javier asserts that the circuit court did not have the authority under CR 60.01 to set aside the November 9, 2006 order dismissing the case for failure to prosecute. Javier points to "the fact that the Judge signed the [November 9, 2006] Order dismissing [as] the operative fact." (Appellant's Brief, p. 22). This means, so goes Javier's argument, that the mistake "was a judicial mistake of law and not a clerical error" and therefore was not subject to correction by resort to CR 60.01.

■ We disagree with Javier's underlying premise that the error here was a judicial error. It was not. Even judges are capable of making clerical errors.

[T]he distinction [between judicial error and clerical error] turns on whether the error was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel, or by the judge. A clerical error involves an error or mistake made by a clerk or other judicial or ministerial officer in writing or keeping records.

*Cardwell v. Commonwealth,* 12 S.W.3d 672, 674 (Ky.2000) (citations and quotation

marks omitted). In the case *sub judice*, the circuit court conducted a bench trial and, no doubt burdened by a weighty docket, failed to rule for more than a year; instead, despite acknowledging that clerical error caused issuance of an administrative notice of dismissal for failure to prosecute, mistakenly signed an order dismissing the case for failure to prosecute. It cannot be asserted credibly that such a sequence of events "was the deliberate result of judicial reasoning and determination." Entry of the order dismissing was a clerical error, and of this we have no doubt, correctable by use of CR 60.01. *Id.* ("CR 60.01 allows a trial court to correct clerical mistakes ... arising from an oversight ... at any time....").

*The Evidence Was Sufficient to Support the Circuit Court's Findings of Fact.*

 The court below found that overpayments to Javier had been made on each of the seven contracts at issue. To prove overpayment, CBC submitted to the circuit court copies of the contracts between CBC and Javier, copies of cancelled checks payable to Javier, copies of cancelled checks jointly payable to Javier and a third-party vendor, copies of cancelled checks payable to a third-party vendor only, invoices from Javier, and invoices from third-party vendors. This evidence showed that CBC made duplicate payments to third-party vendors and to Javier for materials that the vendors provided only once. Javier was therefore not entitled to retain the payments it received from CBC that were intended for the vendors merely because CBC's duplicate payments to the vendors had already satisfied the obligation.

Javier, in response, presented evidence in the form of ledger entries showing it had received payments from CBC and made payments to vendors. However, Javier presented no evidence (of cancelled checks or otherwise) that it in fact paid the third-party vendors the amounts reflected in the ledger.

We will not disturb findings of fact where those findings are not clearly erroneous. CR 52.01. Findings of fact are not clearly erroneous if supported by substantial evidence. *Faulkner Drilling Co. Inc. v. Gross,* 943 S.W.2d 634, 638 (Ky.App. 1997). Substantial evidence is that which a "reasonable mind would accept as adequate to support a conclusion." *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003). If both parties present evidence that qualifies under this definition as "substantial," which often occurs, we will not and cannot disturb the fact-finder's preference for one party's evidence over the other. The substantial evidence Javier presented was enough for the trial court to conclude that CBC had indeed overpaid Javier and that Javier had retained those funds and unjustly enriching its coffers. We will not disturb that determination.

*The Trial Court's Finding That Javier Was Overpaid Does Not Result in an Unlawful Construction of the Javier–CBC Contracts.*

Javier argues that the trial court's finding that it had been overpaid results in an illegal construction of the contracts. To assist our understanding of the argument, Javier explained the nature of these contracts. They were awarded to Javier in part because the company qualified as a "Disadvantaged Business Enterprise" (DBE). Bridge and road construction contracts funded by certain federal programs and awarded by the Commonwealth require that "not less than 10 percent of the amounts made available [for road construction and maintenance] shall be expended with small business concerns owned and controlled by socially and economically disadvantaged individuals"—that is, with DBEs. Transportation Equity Act for the Twenty First Century ("TEA–21"), Pub.L.

No. 105–178, 112 Stat. 107, § 1101(b)(1) (1998); *see also the successor to TEA–21,* The Safe, Accountable, Flexible, Efficient Transportation Equity Act, Pub.L. No. 109–59, 119 Stat. 1144, § 1101(b)(2) (2005).

In its essence, Javier's argument is that the trial court's determination that it was overpaid means that DBE credit was awarded for labor and/or materials that the DBE subcontractor (Javier) did not in fact supply, resulting in a fraud upon the state and federal governments. However, the issue before us does not involve the contract between CBC and the governments and, furthermore, neither the state nor the federal government is a party. The only contracts with which we are concerned are the subcontracts between CBC and Javier. The allegations of improperly-claimed DBE credit do not affect the question of whether overpayments occurred. The issue of whether fraud was committed against the government is separate from the essential issue in this case—whether Javier was overpaid. If CBC or another prime contractor received DBE credits for labor or materials that Javier did not in fact provide, that is for the state and federal authorities to police. The sole issue for this court to decide is whether Javier was entitled to all of the money it received from CBC. We find no merit in Javier's argument of a resultant fraud.

*The Doctrine of Unclean Hands Is Not a Bar to CBC's Claim of Unjust Enrichment.*

■ Javier asserts that CBC should not be allowed to recover overpayments under a theory of unjust enrichment because CBC had unclean hands. This is a twist on the previously-discussed argument of resultant fraud. Javier argues that by paying suppliers directly (and not the DBE subcontractor, Javier), CBC was defrauding the governments which relied on CBC's representations regarding the per-centage of the highway contract amounts expended with DBEs. Javier claims CBC had unclean hands by doing so. We disagree.

■ No court or administrative body has found that CBC obtained or maintained its highway contracts by fraudulently claiming DBE credit or that the credit allowed would be considered fraudulent if CBC recovered the overpayments. Furthermore, even if CBC fraudulently claimed DBE credit affecting a third party, *i.e.,* the government, that fact would not necessarily mean that it has unclean hands relative to Javier.

The traditional defense of unclean hands applies to facts involving only two parties, plaintiff and defendant, and one transaction involving both parties. The maxim does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. In this regard, ordinarily, the alleged wrongdoing must have an immediate and necessary relation to the matter being litigated, or must in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. If the wrong is shown to be merely collateral to the complainant's cause of action, it does not constitute a matter of defense.

... Furthermore ... *it appears to be the general rule that relief will not be denied because of* [*a party's* ] *wrongdoing in the course of a transaction with a third person,* or because of a wrong practiced by both parties on a third person....

27A Am.Jur.2d *Equity* § 104 (2010) (footnotes omitted; emphasis added). The fraud Javier alleges CBC would be perpetrating if allowed to recover would be against entities not party to the subcon-

tracts or this litigation—the state and federal governments. As the circuit court put it, "[t]he doctrine [of unclean hands] does not repel all sinners from a court of equity, especially where there were no injurious consequences" suffered by the party asserting the doctrine—in this case, Javier. (Final Judgment, pp. 6–7, *quoting Parris' Adm'r v. John W. Manning & Sons*, 284 Ky. 225, 144 S.W.2d 490, 492 (1940)).

Furthermore, the alleged fraud does not "affect the equitable relations between the parties in respect of something brought before the court for adjudication." 27A Am.Jur.2d *Equity* § 104. If CBC overpaid Javier, it is entitled to recoup those monies, regardless of any fraud CBC may have committed against third parties. Accordingly, Javier's claim of fraud appears to be "merely collateral to the complainant's cause of action." *Id.* In fact, any such claim of fraud would not accrue in favor of the governments, if at all, until this judgment in favor of CBC became final. Therefore, we agree with the circuit court that the doctrine of unclean hands does not bar CBC from recovering in equity the overpayments it made to Javier.

### Conclusion

CBC presented sufficient evidence to support the circuit court's judgment that Javier was overpaid, and there is no ground upon which the judgment from which the appeal has been taken could be reversed. Accordingly, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.